**Wayne TOMPKINS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Curtis TOMPKINS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 84–181, 84–238.**

Supreme Court of Wyoming.

Aug. 28, 1985.

Rehearing Denied Sept. 30, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, and James Carbone, Legal Intern, Wyoming Public Defender Program, Cheyenne, for appellant Wayne Tompkins.

Leonard D. Munker, State Public Defender, and Martin J. McClain, Appellate Counsel, Wyoming Public Defender Program, and Jon Randolph Kniss, Defender Aid Program, Cheyenne, for appellant Curtis Tompkins.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Roger Fransen, Asst. Atty. Gen., and Patrick J. Crank, Legal Intern, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant Wayne Tompkins pled guilty to possession with intent to deliver a controlled substance, marijuana, in violation of § 35-7-1031(a)(ii), W.S.1977, but reserved the right to appeal the constitutional issues arising from the search of the Tompkins' property. Appellant Curtis Tompkins was convicted, by a jury, of aiding and abetting in the possession of a controlled substance, marijuana, with the intent to deliver, in violation of §§ 6-1-201(a) and (b)(ii) and 35-7-1031(a)(ii), W.S.1977.

We reverse in part and affirm in part.

The Fremont County Sheriff's Department received two telephone calls, one on September 14, 1983, and the other on September 28, 1983, both calls relaying information about a large amount of marijuana being grown in a greenhouse on property belonging to Kathleen Tompkins-Taylor. A search warrant for the property was requested, and it was denied by the Fremont County Court Judge, who suggested further investigation. Thus, on September 28, 1983, in the early evening, two deputies dressed in street clothes and driving an unmarked car proceeded to the property, which is located out in the country, to talk to Kathleen Tompkins-Taylor.

The deputies parked their car outside the fence surrounding the property, entered by stepping through wood rails next to a wire fence, and walked to Kathleen's house. The house had no visible lights showing and was padlocked, but a truck known by one of the deputies to belong to Kathleen was parked nearby. While one deputy knocked on what appeared to be the front door, the other deputy walked around the side of the house and, looking through the opaque sides of the greenhouse, observed "foliage." He then looked further and found several nail holes through which he saw what appeared to be marijuana in the greenhouse. Still not satisfied, the deputy pried back a partially unsecured panel on the greenhouse to gain a better view of this suspected marijuana. He then rejoined his partner at the front of the house.

At this point the deputies called their dispatch office to send reinforcements, and they secured Kathleen's house. Once additional officers arrived, the two deputies proceeded to another house on the property. The house was occupied by Wayne Tompkins, and the deputies, still wanting to question Kathleen, believed that they might find her there.

Again, as one deputy knocked at the front door, the other walked around the house, looking for another entrance or exit. While doing so, the deputy looked into a lighted window and saw what he believed to be several marijuana plants. The occupant of the house, Wayne, upon hearing a knock at his door, invited the visitors in. Both deputies entered the house and one asked if Kathy was there. Wayne told them she was not there and invited them still further into the house. Once in the living room, the deputies noticed what were later proven to be several marijuana plants.

They identified themselves as police officers and placed Wayne under arrest.

The deputies then proceeded to Curtis' house, which was also located on the property. Curtis, who had finally noticed all the commotion, met the officers in his front yard with a rifle, which he put down upon learning the identity of the visitors. The deputies originally wanted only to remove Curtis from the scene so they could secure the property, but after reading Curtis his rights they asked him if he too possessed marijuana. He acknowledged that he did indeed have a small amount, and so the officers placed him under arrest. Charges were brought against Kathy, Wayne and Curtis. All three moved to suppress the marijuana seized. The motion was granted in favor of Kathy, due to a lack of probable cause for the issuance of the search warrant; but the motions of Wayne and Curtis were denied. Charges against Kathy were subsequently dropped.

I

On April 2, 1984, Wayne and the deputy county and prosecuting attorney stipulated as follows: (1) That Wayne would enter a plea of guilty to the charge of possession of a controlled substance with intent to deliver; (2) said plea would be entered prior to the trial of Curtis; and (3) Wayne

" * * * reserves the right to appeal the constitutional issues arising from the search of the Tompkins property on September 28th and 29th, 1983. The parties deem the issue to be a question of fundamental right and that by pleading guilty the Defendant does not waive his right to appeal."

The trial court then accepted Wayne's plea of guilty and accepted the stipulation.

■ The first question facing us is the propriety of entering a plea of guilty with the express reservation of the right to appeal the constitutional issues arising from a search. The general rule in criminal cases is that a defendant who pleads guilty is deemed to have admitted all of the essential elements of the crime charged, and that he thus waives all nonjurisdictional defens-

es. Even though a plea of guilty has been entered, however, a defendant may challenge on appeal jurisdictional defects with respect to the charge against him, such as the constitutionality of the statute under which he was charged. *Armijo v. State*, Wyo., 678 P.2d 864 (1984); *Small v. State*, Wyo., 623 P.2d 1200 (1981).

Rule 15, W.R.Cr.P., governs pleas in criminal cases. The alternative pleas are listed as "not guilty, not guilty by reason of mental illness or deficiency, unfit to proceed by reason of mental illness or deficiency, guilty, or nolo contendere." Rule 15(a), W.R.Cr.P. There is no provision for a conditional plea of guilty.

We stated in *Britain v. State*, Wyo., 497 P.2d 543, 545 (1972), that "Rule 15 of our criminal rules is the same as Rule 11 of the Federal Rules of Criminal Procedure." Since that time, Rule 11, F.R.Cr.P., has been amended, and the rules are no longer the same. Effective August 1, 1983, the federal rule was amended to provide for a conditional plea of guilty as one of several alternative pleas. That rule provides, in part:

"With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea." Rule 11(a)(2), F.R.Cr.P.

■ The fact that our Rule 15 was once the same as Rule 11, F.R.Cr.P., and has not been amended to match Rule 11(a)(2), F.R. Cr.P., adds weight to the conclusion that a conditional plea is neither contemplated nor to be allowed under our rules of criminal procedure.

It is enlightening to note what a commentator had to say about the effect of guilty pleas under Rule 11, F.R.Cr.P., before subsection (a)(2) went into effect.

"A plea of guilty waives all nonjurisdictional defects in the proceeding. It even

bars the later assertion of constitutional challenges to the pretrial proceedings. Claims that the prosecution obtained evidence unlawfully, or that the defendant was illegally detained, or that he was denied a speedy trial will not survive a guilty plea, except to the extent that they may go to the voluntariness of the plea. But the preclusive effects of guilty pleas do not apply to constitutional claims that go 'to the very power of the State to bring the defendant into court to answer the charge brought against him.' A defendant who has pleaded guilty may still contend that the indictment or information failed to state an offense, or that the statute under which he was charged is unconstitutional, or that the prosecution is barred by double jeopardy." 1 Wright, Federal Practice and Procedure: Criminal 2d § 175, pp. 624–628 (1982).

*Armijo v. State,* supra, 678 P.2d at 867, involved a claim that the statute under which Mr. Armijo was charged was unconstitutional. We said:

"* * * A criminal defendant does not, however, waive the right to challenge the constitutionality of the statute defining the crime to which he enters a plea of guilty by virtue of his plea. *Lopez v. State,* Wyo., 586 P.2d 157 (1978); *Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); and 1 Wright, Federal Practice and Procedure, § 175, pp. 627–628 (1982). Little purpose would be served by requiring a defendant to insist upon a trial in order to preserve his opportunity to challenge the constitutionality of the statute, and we do not insist upon that. The constitutional question is properly before this court."

In *Lopez v. State,* Wyo., 586 P.2d 157 (1978), the case referred to in Armijo above, the defendant claimed that the conduct to which he pled guilty and established a factual basis constituted a violation of the negligent homicide statute rather than the manslaughter statute. The issue which he preserved for appeal was whether the negligent homicide statute impliedly repealed the manslaughter statute, an issue which goes to the jurisdiction of the court to try him for manslaughter.

■ In the case at bar, Wayne is not challenging the jurisdiction of the court to bring him into court to answer to the charge of possession with intent to deliver; he is not challenging the constitutionality of the statute to which he pled guilty. He is only seeking a ruling on the admissibility of evidence. Inasmuch as our Rule 15 does not allow for such a conditional plea, we hold that such is not permissible. Because of the situation in which Wayne pled guilty, i.e., his attorney and the prosecuting attorney stipulated to his being able to enter a conditional plea, we reverse this case as to him and remand the case to the district court for the taking of a proper plea, that being one of those listed in Rule 15, W.R. Cr.P.

II

Curtis was convicted, by a jury, of aiding and abetting in the possession of a controlled substance with intent to deliver. Before addressing the issues presented by Curtis in his appeal, our holding in Wayne's appeal makes necessary a brief inquiry into the effect, if any, such holding has on Curtis.

■ Under common law, the conviction of an aider and abettor could not be sustained unless the principal were also convicted. 21 Am.Jur.2d Criminal Law, § 175 (1981). However, under our statute, an accessory before the fact "[m]ay be indicted, informed against, tried and convicted either before or after and whether or not the principal offender is indicted, informed against, tried or convicted." Section 6–1–201(b)(ii), W.S.1977.

■ We have held that in order to convict a person of aiding and abetting the commission of a substantive offense, it must be proven in his trial that the crime in question was committed by someone and that the person charged as an aider and abettor associated himself with and participated in the accomplishment and success of

the criminal venture. *Haight v. State,* Wyo., 654 P.2d 1232 (1982).

At trial, the jury was instructed that the elements of the crime with which Curtis was charged were as follows:

"1. That a person named Wayne Tompkins

"2. on September 29, 1983

"3. in Fremont County, Wyoming,

"4. unlawfully possessed

"5. a controlled substance (marijuana)

"6. with intent to deliver.

"7. And that the defendant, Curtis Tompkins,

"8. knowlingly [sic] aided and abetted Wayne Tompkins in that possession with intent to deliver."

The jury was also instructed that:

"You, of course, may not find a defendant guilty of an offense unless you find beyond reasonable doubt that every element of the offense as defined in these instructions was committed by at least one of [the] associated persons, and that the defendant knowingly participated in its commission."

In establishing the first six elements of the crime, the focus of the prosecution was on Wayne's guilty plea. In Curtis' trial the jury was informed on more than one occasion that Curtis' brother, Wayne, had pled guilty to possession of marijuana with intent to deliver. For example, the prosecutor stated:

"Your Honor—Your Honor, Wayne Tompkins' 'guilty' plea indicates that that marijuana was heading for delivery. And all I'm trying to do by showing the dry weight is to estimate the value of that crop in Fremont County."

The prosecution closed its case by:

"MRS. PATTON: At this time, Your Honor, the State would like to read into the record and for the jury the stipulation that counsel entered into and then the State intends to rest its case.

"THE COURT: All right. Go ahead.

"MRS. PATTON: Thank you. We would like to formally inform the jury that as [a] matter of record yesterday, April 2nd, 1983, Wayne Tompkins pled 'guilty' to the charge of possession with intent to deliver in violation of Wyoming Statutes Section 35–7–1031(a) double (i) and also, Your Honor, that the jury may accept that stipulation as evidence unlike everything else that the attorneys say, you can accept that as evidence in the case. Thank you."

The opening and closing statements of counsel were not preserved in the record, but it is apparent that Wayne's plea of guilty was referred to at least in the opening statement. After the opening statement, the judge said to the jury:

"THE COURT: The Court noted that during the State's opening argument, the word 'principal' was used in connection with the plea of 'guilty' that was entered by this Defendant's brother, Wayne Tompkins. That word is undoubtedly confusing to you. It is usually confusing to me. The fact is, I don't think you have to pay attention to that word or worry about it. All you need to be advised is that the defense agrees that this Defendant's brother pleaded 'guilty' to a charge of possession of marijuana with intent to deliver that marijuana. All right. You wish to reserve your opening statement. Mrs. Patton, you may call your first witness."

The only other evidence possibly bearing upon the first six elements of the crime as outlined in the instructions was that reflecting that eighteen marijuana plants were taken from the Tompkins' property; when the plants were dried by the police, they weighed a total of six pounds and filled five large grocery bags; and the street value of that amount of marijuana was approximately $10,000. However, there was no link made between the amount of marijuana seized and any possible intent on the part of Wayne.

Regardless of whether or not Wayne pled guilty or not guilty, was found guilty or not guilty, and before or after any of these alternatives, the prosecution could have introduced evidence that on September 29, 1983, Wayne unlawfully possessed,

in Fremont County, a controlled substance (marijuana) with intent to deliver—the first six elements of the crime as outlined in the instruction. This was not done. The parties obviously relied upon the stipulation that Wayne had pled guilty to the charge of possession with intent to deliver to establish the first six elements.

Because of the stipulation, our holding that Wayne's conditional guilty plea is impermissible does not alter the status or aspect of that which occurred at Curtis' trial. The stipulation could have been to the effect that Wayne possessed the controlled substance with intent to deliver without making any reference to the guilty plea. We hold this to be the intent of the stipulation. The parties knew of the conditional nature of the plea and that Wayne's acknowledgment of guilt would be subject to expungement should the procedure be as anticipated. Yet the parties made no mention of the condition in the stipulation and were apparently content with the waiver of evidence as to the first six elements of the offense as set forth in the instructions, regardless of the ultimate outcome of Wayne's case. The stipulation was treated as an admission by Curtis of such elements. There were no objections to the comments or to the introduction of the stipulation. Although not artfully worded, the parties obviously intended the stipulation to be a waiver of the necessity for the prosecution to establish such six elements through evidence or to be an admission of the violation on the part of Wayne and to be so considered as part of the evidence.[1]

Although we have discussed the effect of setting aside Wayne's plea of guilty in Curtis' case, we note that Curtis has not challenged the sufficiency of the evidence to support the element of the offense with which he was charged, including the element of his knowingly aiding and abetting Wayne in the commission of the offense. Curtis words the two issues in his appeal as follows:

"1. Whether Appellant had an expectation of privacy in the Tompkins' property, and thus standing to object to the introduction of evidence obtained because of an illegal search.
"2. Whether incriminating evidence was properly admissible when it was fruit of the poisonous tree."

## EXPECTATION OF PRIVACY

The United States Supreme Court has ruled that a defendant may claim the benefits of the exclusionary rule only if his or her own Fourth Amendment rights have in fact been violated.

" * * * A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Alderman*, supra, 394 U.S., at 174, 89 S.Ct., at 966. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. See *Simmons v. United States*, supra, 390 U.S., at 389, 88 S.Ct., at 973. * * *" (Footnote omitted.) *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978), reh. denied 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979).

This court said, in *Parkhurst v. State*, Wyo., 628 P.2d 1369, 1374, cert. denied 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981):

" * * * We agree that one seeking the imposition of the exclusionary rule must be claiming a violation of his/her own constitutional rights under the Fourth Amendment, United States Constitution, or § 4, Art. I, Wyoming Constitution.

---

1. Our holding makes it unnecessary to consider the propriety of receiving or of not receiving into evidence pleas of guilty or of not guilty or findings of guilty or of not guilty, either over objection or as plain error without objection.

And where the accusation is that the police have improperly searched or seized something, the claimant must have had a legitimate expectation of privacy as to that something. Factors to be considered in making this determination include: (1) the precautions taken in order to maintain one's privacy; (2) the likely intent of the drafters of the United States and Wyoming Constitutions; (3) the property rights the claimant possessed in the invaded area; (4) the legitimacy of the individual's possession of or presence in the property which was searched or seized. Comment, supra, 15 Land & Water L.Rev. at 283, fn. 56, and at 295." (Footnote omitted.)

■ Here we conclude that Curtis had no expectation of privacy as to the items searched and seized at either Kathy's house or Wayne's house.

It clearly appears from the record that Curtis was neither in possession of or present in Kathy's house or Wayne's house prior to or at the time of the search. His standing would depend upon any property rights that he may have possessed with respect to those houses. Although the cabin in which Curtis resided was located on property owned by his sister, Kathy, he had no legal title to nor interest in the property. The record shows that Curtis did not regularly visit at his sister's house. The record is silent as to whether Curtis had any access to either Kathy's home or Wayne's home except by invitation. Police Officer Roy Ogden testified:

"Q. And you were told, were you not, that unless Kathy Jo was there, Curtis wasn't even allowed in her house?

"A. That's what I was told.

"Q. And that was because he had a habit of borrowing food and what have you and never paying back?

"A. I said that he borrowed things and he wouldn't bring it [sic] back."

Curtis had no expectation of privacy in either Kathy's home or Wayne's home. He had no control over whom they allowed to enter their homes. In fact, Wayne did invite two police officers to come into his home. Inasmuch as Curtis had no legitimate expectation of privacy in the other two homes, he has no standing to object to the constitutionality of the searches of those homes; thus, the evidence thereby obtained was properly admitted against him.

## FRUIT OF THE POISONOUS TREE

■ Although it is not obvious from the brief, apparently Curtis contends that his arrest was without probable cause and thus evidence seized and statements made by him as a result of the unlawful search should have been excluded from trial as "fruit of the poisonous tree." This issue was not raised at trial, and therefore the plain-error rule applies. Rule 49(b), W.R. Cr.P.

" * * * When review is sought under the plain error doctrine this Court must be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, that is, we are entitled to know the particular facts. [Citations.] Further, the proponent of plain error must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. [Citations.] If these criteria are met, the error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept procedurally expressed in Rule 49(a), W.R. Cr.P. [Citations.] The assertion of a constitutional ground of error will not avoid the application of these criteria, and if they are not satisfied any claim for review under the plain error doctrine must fail. [Citations.]" *Hampton v. State*, Wyo., 558 P.2d 504, 507–508 (1977).

The record is sketchy as to the events leading up to Curtis' arrest. After arresting Wayne, the police asked him if there was anyone else around and were told that "Curtis was down at his house below the hill." Officer Ogden testified that he proceeded to the house "to find out if he had

any place else to stay that night other than on the property as I advised him that we were going to pursue a search warrant and that we were going to secure the premises." When the officer approached Curtis' house, Curtis appeared carrying a rifle. The officers advised him that they were police officers, and Curtis put the rifle down.

Officer Ogden testified:

"Q. Tell us basically what happened down at house No. 3.

"A. Well, I got to house No. 3; I asked him if he had any place else to stay for the night. He said he didn't. I advised him of his rights per *Miranda* which gives him the right not to answer any questions. I asked him if he would waive his rights and talk to me and he said he would. I asked him if he had any marijuana on the premises.

* * * * * *

"A. He told me that he had some marijuana on the premises.

"Q. What happened then?

"A. I looked at what he told me was marijuana and I arrested him for possession of marijuana."

 The record is not clear why the officers went into Curtis' house, but it may have been to check on the potatoes that Curtis had been frying. What we can ascertain from the record is that Curtis was asked if he could leave the premises so it could be secured, and he replied that he had no place to go; he was advised of his *Miranda* rights and asked if he had any marijuana; he voluntarily showed his supply of marijuana to the police; he was arrested for possession of marijuana; and the charges were later changed to aiding and abetting possession of a controlled substance with intent to deliver.

Under the standard of plain error, the record does not substantiate the claim of an illegal arrest, and therefore the voluntary statement and evidence obtained were properly admitted at trial.

As to Wayne, we reverse and remand to the district court for proceedings in accord with this opinion; as to Curtis, we affirm.

ROSE, Justice, dissenting, with whom CARDINE, Justice, joins.

I dissent to the holding by the majority that Curtis Tompkins had no expectation of privacy in the property searched by deputy sheriffs and, therefore, had no standing to object to the constitutionality of the search.

In an effort to obtain probable cause of the commission of a crime, two deputy sheriffs crawled through a fence surrounding the Tompkins land and searched the enclosed property. Appellant Curtis Tompkins, his brother and his sister resided on that property in separate cabins. Curtis Tompkins argues on appeal that he had an expectation of privacy in that fenced property on which he lived with his family.

It is well settled that an individual has a legitimate expectation of privacy in his home, *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and in the grounds and buildings associated with his home. *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Such areas deserve the most scrupulous protection from governmental invasion. *Payton v. New York, supra.*

Furthermore, a defendant's lack of legal title of ownership to the searched property does not diminish his reasonable expectation of privacy in that property. We held in *Parkhurst v. State*, Wyo., 628 P.2d 1369 (1981), that a guest in an automobile owned by another could reasonably expect freedom from state encroachment and, therefore, had standing to protest the search of the car's trunk.

The majority do not dispute these basic rules of standing, but conclude that Curtis Tompkins had no expectation of privacy in the homes of his brother and sister. The search objected to by appellant, however, is the search of the fenced property as a unit, shared by family members. The family resided on the property, enclosed it, and each member had a legitimate expectation of privacy in the living areas, including the

greenhouse. It is unrealistic and unjust to analyze the privacy interests in this case as though the individuals involved were mere neighbors residing on distinct pieces of property.

Curtis Tompkins had a reasonable expectation of privacy in the areas unlawfully invaded by officials searching for marijuana plants. Therefore, he had standing to object to the constitutionality of the search. I would have reversed the judgments entered against both Curtis Tompkins and Wayne Tompkins.

CARDINE, Justice, dissenting.

I dissent.

The county court judge, on September 14, 1983, denied issuance of a search warrant for Kathleen Tompkins-Taylor's property and suggested further investigation. On September 28, 1983, two deputies undertook further investigation—surreptitiously, at night, without permission or authority and unlawfully in trespass—by entering through a fence onto the private property of Kathleen Tompkins-Taylor. They pried back a panel on the wall of her greenhouse and peered in observing what they believed was marijuana. Kathleen was not home, and now deputies urgently needed to find Kathleen. They continued a search of the property. While searching for Kathleen, they stumbled onto Wayne's house, also located within the fenced property. The deputy peeked in a window of Wayne's house still looking for Kathleen and instead inadvertently observed marijuana plants.

The deputies, wanting to check on potatoes that were frying, proceeded to Curtis' house, which was also within the same fenced, enclosed area as Kathleen's house. The deputies found the potatoes and also a small amount of marijuana at Curtis' house.

Charges against Kathleen were dismissed because of the unlawful search of her house. Wayne entered a conditional plea of guilty reserving the right to appeal the constitutional issues relating to the search of his property. We held that Rule 15, W.R.Cr.P., did not permit a conditional plea to obtain an evidentiary ruling and remanded Wayne's case for re-pleading. I concur in the opinion of the court as to Wayne.

Curtis went to trial upon a charge of aiding and abetting Wayne in the possession of a controlled substance with intent to deliver. The majority opinion correctly recites that the State had the burden of proving that *Wayne unlawfully possessed a controlled substance with intent to deliver* and that Curtis knowingly aided and abetted Wayne in the endeavor. The State proved that Wayne unlawfully possessed a controlled substance with intent to deliver by putting into evidence Wayne's plea of guilty and informing the jury on several occasions that the plea established the necessary elements and was proof, in the words of the prosecutor, that the "marijuana was heading for delivery." Now we have vacated Wayne's plea of guilty. The status of the record in Curtis' case now is that, without Wayne's guilty plea, there simply is no evidence at all that *Wayne unlawfully possessed marijuana with intent to deliver.* Such evidence may or may not exist. These necessary elements, possession with intent on the part of Wayne to deliver, may, in the absence of his guilty plea, be incapable of proof. I would, therefore, also reverse Curtis' conviction and remand for further proceedings.

With respect to the claim of both Wayne and Curtis that results of the search should be excluded as "fruit of the poisonous tree," both Wayne and Curtis moved to suppress the evidence seized. Their motions were denied, but the effect was to preserve the right to raise the question of unlawful search on appeal without having to invoke the doctrine of harmless error.

For the reasons stated, I concur in the reversal as to Wayne but would also reverse as to Curtis.