**Roy Joseph OCHOA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff) (Two Cases).**

**Nos. 92–66, 92–67.**

Supreme Court of Wyoming.

March 22, 1993.

Leonard D. Munker, State Public Defender, Mike Cornia, Sr. Asst. Public Defender, argued, and Deborah Cornia, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Mary Beth Wolff, Asst. Atty. Gen., argued for appellee.

Before MACY, C.J., and THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. (Retired).

CARDINE, Justice.

Appellant (Roy Joseph Ochoa) pled nolo contendere to two counts of Indecent Liberties with a Minor (W.S. 14–3–105). He now challenges his conviction, alleging: (a) that the State charged and convicted him with the wrong crime; (b) that W.S. 14–3–105 is unconstitutional; and (c) that he was improperly sentenced.

We affirm.

Ochoa frames the issues as follows:

I. Did the legislature intend that third degree sexual assault would cover consensual sexual intercourse with persons under sixteen years of age?

II. Does allowing the State to choose to charge the appellant with indecent liberties violate his rights to equal protection under the Fourteenth Amendment to the United States Constitution and Article 1, §§ 2 and 7 of the Wyoming Constitution?

III. Is Wyoming Statute 14–3–105 void for vagueness and does its application violate due process when read in conjunction with other existing statutes?

IV. Should Wyoming Statute 14–3–105 be stricken as overbroad?

V. Was it reversible error for the court to consider the state hospital report in sentencing?

VI. Since the trial court lacked jurisdiction to order restitution in an undetermined amount should the order of restitution be stricken?

The State divides the issues as follows:

I. Whether appellant was properly charged and convicted under W.S. 14–3–105?

II. Whether the trial court properly considered the state hospital report for sentencing?

III. Whether the judgment and sentence should be corrected to reflect a reasonable amount of restitution?

### FACTS

In late summer of 1991, Mr. Ochoa was arrested and charged with four counts of indecent liberties with a minor arising out of four separate incidents involving the same minor. After a preliminary hearing on October 11, 1991, and an arraignment on October 22, 1991, a trial date was set for December 16, 1991. At his arraignment, Ochoa pleaded not guilty to each of the four charges.

On October 30, 1991, the district court suspended the proceedings to allow a psychological examination of Ochoa because of his erratic behavior. Ochoa was examined by the state hospital and, on his request, by an independent psychologist, both of whom concluded that Ochoa was fit to stand trial.

On January 9, 1992, Ochoa was charged with two additional counts of indecent liberties. These additional charges were based on incidents with a different minor, which had occurred prior to the initial charges of the summer of 1991. Ochoa was also charged with intimidating a witness (W.S. 6–5–305(a)). Ochoa was arraigned on the additional counts on January 16, 1992, and pled not guilty to each specified count.

Soon after, Ochoa, pursuant to a plea agreement, pled nolo contendere to two counts of indecent liberties, one count for each minor. The district court accepted the agreement. The district court then carefully informed Ochoa of his right to a presentence investigation. Ochoa and his attorney acknowledged that they had discussed the merits of a presentence investigation and informed the court that Ochoa would forego the investigation until after the sentencing. The court accepted Ochoa's decision to postpone the presentence investigation.

At sentencing, the district court informed Ochoa and his counsel that it had reviewed both of the psychological reports which had been compiled as a result of the exams performed by the state hospital and the independent psychologist. The district court specifically questioned Ochoa and his counsel about whether they wanted the court to consider the reports in the sentencing decision. Ochoa, through counsel, replied that these reports should be considered.

On February 26, 1992, Ochoa was sentenced to serve seven to ten years on the first count and four to eight years on the second count, to run consecutively. Additionally, he was fined a total of $10,000 for both counts, however, the court left open the exact amount he would have to pay as restitution.

### ANALYSIS

### Waiver by Nolo Contendere Plea

Ochoa first argues that he was incorrectly charged, convicted and sentenced under our indecent liberties statute because it was not intended to apply to his actions. He mistakenly frames this as a challenge to the validity of the statute. Instead he is simply challenging the State's information charging him with violation of the statute.

▮ A criminal defendant, by pleading guilty, admits all of the essential elements of the crime charged and thus waives all nonjurisdictional defenses. *Davila v. State*, 831 P.2d 204, 205 (Wyo.1992); *Zanetti v. State*, 783 P.2d 134, 139 (Wyo. 1989); *Tompkins v. State*, 705 P.2d 836, 839 (Wyo.1985); *Armijo v. State*, 678 P.2d 864, 867 (Wyo.1984). A plea of nolo contendere has the same effect as a guilty plea. *Davila*, 831 P.2d at 205; *Zanetti*, 783 P.2d at 139; *State v. Steele*, 620 P.2d

1026 (Wyo.1980). Therefore, when a criminal defendant pleads nolo contendere, he or she waives all nonjurisdictional defenses and objections. *Davila*, 831 P.2d at 205.

■ We have said that jurisdictional defenses and objections involve:

> "[T]he very power of the state to bring the defendant into court to answer the charge against him" *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628, 636 (1974). Jurisdictional defects include: unconstitutionality of the statute defining the crime pled to, *Armijo v. State*, 678 P.2d 864, 867–68 (Wyo.1984), failure of the indictment or information to state an offense, and double jeopardy. *Tompkins v. State*, 705 P.2d 836, 840 (Wyo.1985) * * *.

*Davila*, 831 P.2d at 205–06. In other words, a criminal defendant may, after pleading guilty or nolo contendere, attack a defect only if it involves "attributes of jurisdiction." *United States v. Gipson*, 835 F.2d 1323, 1324 (10th Cir.1988) (holding that a challenge based upon statutorily mandated recusal of judge is jurisdictional and thus preserved). Nonjurisdictional defenses and objections are

> those "objections and defenses which would not prevent a trial." *Sword [v. State]*, 746 P.2d [423,] 426 [ (Wyo.1987) ]. Even constitutional challenges to pretrial proceedings fall into this category. *Zanetti*, 783 P.2d at 138.

*Davila*, 831 P.2d at 206.

Ochoa's initial contention is, essentially, no different than the error alleged in *Sword v. State*, 746 P.2d 423 (Wyo.1987). There, Mr. Sword attempted to challenge the validity of the grand jury proceedings, but we denied review because the alleged defect was nonjurisdictional and raised after his guilty plea. *Sword*, 746 P.2d at 425. Ochoa's challenge is grounded in the same basic process as the grand jury procedure, that is, deciding whether and how to charge a suspected criminal.

■ The Oklahoma Supreme Court, addressing this same issue, held that when a criminal defendant pleads guilty to the crime charged and subsequently attempts to challenge the "propriety of the charge as applied to the facts in her case," then

that type of challenge is nonjurisdictional. *Stokes v. State*, 738 P.2d 1364, 1366 (Okl. Crim.App.1987). Mr. Ochoa's first argument is no different. He argues that the indecent liberties statute should not be applied to the facts of his case.

By pleading nolo contendere, Ochoa admitted all the essential elements of the crime charged. There is no dispute that he was charged with indecent liberties by the State and that he agreed to plead to that charge. In essence, Ochoa is attempting to challenge the district court's determination, after his nolo plea, that he violated the indecent liberties statute. This he cannot do. *Small v. State*, 623 P.2d 1200, 1202 (Wyo.1981).

We hold that Ochoa's initial allegation of error is nonjurisdictional because it is an objection to the pre-trial procedure and not one that would prevent a trial.

### Equal Protection

■ Ochoa next argues that permitting the State to choose which statute to charge him under is violative of both the federal and Wyoming constitutional guarantees of equal protection. He is not directly challenging the validity of the statutes involved. Instead, he is challenging the constitutionality of the decision-making process used by the State in the performance of its charging function. This is no different than contesting the constitutionality of the prosecution's methods for obtaining evidence against a defendant.

This second claim must also fail because it is not jurisdictional. It is nonjurisdictional because it relates to possible deprivation of constitutional rights which occurred before the trial. *Davila*, 831 P.2d at 206; *citing Zanetti*, 783 P.2d at 138; *see generally Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (which affirmed the principle that when the defendant pleads guilty, he or she waives nonjurisdictional defects and may not thereafter raise independent claims involving the deprivation of constitutional rights occurring before entry of the plea). Therefore, we hold that Ochoa's second

claim of error was also forfeited by his nolo contendere plea.

### Vagueness

█ Ochoa next argues that our indecent liberties statute is both unconstitutionally vague and overbroad. Both of these contentions challenge the validity of the statute under which he was charged and are jurisdictional. Hence, they are both preserved beyond the nolo contendere plea and properly before this court.

We specifically held our indecent liberties statute constitutional against a vagueness challenge in *Sorenson v. State*, 604 P.2d 1031, 1035 (Wyo.1979). Several subsequent cases have reaffirmed *Sorensen's* holding. *Griego v. State*, 761 P.2d 973, 976 (Wyo.1988); *Britt v. State*, 752 P.2d 426, 428 (Wyo.1988).

█ A challenge for vagueness can be a "facial challenge" or an "as applied to the facts" challenge. *Griego*, 761 P.2d at 975. However, a "facial challenge" is available in only two situations: (1) when the statute reaches a substantial amount of constitutionally protected conduct, and (2) when the statute is shown to specify no standard of conduct at all. If neither of these situations exists, then only an "as applied" challenge is available. *Griego*, 761 P.2d at 975.

█ Neither situation exists under these facts. Although Ochoa argues that consensual sexual relations are a fundamental right protected by the constitution, that argument is without merit because this case does not involve two consenting adults. *Scadden v. State*, 732 P.2d 1036 (Wyo.1987). Therefore, no fundamental constitutional right is broached. Additionally, we have previously held that our indecent liberties statute is not one of those statutes which have no standards at all. *Griego*, 761 P.2d at 976. Thus, Ochoa can only make an "as applied" argument.

█ Our indecent liberties statute clearly proscribes the conduct, sexual intercourse with a minor, engaged in by Ochoa. We have repeatedly interpreted this statute to apply where an adult engaged in sexual intercourse with a minor. *Griego*, 761 P.2d at 976, *citing McArtor v. State*, 699 P.2d 288 (Wyo.1985); *Auclair v. State*, 660 P.2d

1156 (Wyo.1983); *Ketcham v. State*, 618 P.2d 1356 (Wyo.1980). As we said in *Griego*, "[t]hese decisions demonstrate that § 14–3–105 applies, without question, to certain activities." 761 P.2d at 976. One of those activities is sexual intercourse with a minor. We hold that our indecent liberties statute is not unconstitutionally vague as applied to Mr. Ochoa's actions.

### Overbreadth

█ Ochoa next claims that our indecent liberties statute is unconstitutionally overbroad because it reaches constitutionally protected activities. First, he argues that the statute regulates the fundamental right of privacy, and second he argues the statute regulates First Amendment protections.

The overbreadth doctrine is simply an offspring of the United States Supreme Court's tiered system of constitutional judicial review. Because the Court frames its different levels of heightened scrutiny analysis in terms of "narrowly drawn" or "least restrictive alternatives" the term "overbroad" as an antonym is a natural result. Therefore, when we speak of the "doctrine of overbreadth," a protected constitutional right requiring heightened judicial review must be involved. Henry P. Monaghan, *Overbreadth*, 1981 Supreme Court Review 1, 37–38. Application of the "overbreadth doctrine" has most frequently occurred in the First Amendment's protection of speech, but it applies equally when other constitutional protections are involved. Laurence H. Tribe, *American Constitutional Law* § 12–27 at 1022 (2d ed. 1988).

A statute is facially void under the "overbreadth doctrine"

> if it "does not aim specifically at evils within the allowable area of [government] control, but * * * sweeps within its ambit other activities that constitute an exercise" of protected expressive or associational rights.

Tribe, *supra, citing Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940). In other words, a statute intending to regulate in a non-constitu-

tionally protected area may be void if it also substantially proscribes activities which involve the exercise of constitutionally protected rights. *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). However, the overbreadth doctrine is "strong medicine" which should be utilized sparingly. *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 958, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984), *citing Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916.

Ochoa asserts that our indecent liberties statute reaches conduct protected by the fundamental right to privacy. However, Ochoa fails to recognize that this fundamental right of privacy has only been extended to sexual relations between adults. *Scadden v. State*, 732 P.2d 1036, 1039 (Wyo.1987). We said,

> Within the purview of this case, we determine that instructors do not have a constitutional right to have sexual relations with minor students in the state's educational system. We distinguish any authority which pertains to *adults* or concerns the privacy-of-the-home relationship. [emphasis added]

*Scadden*, 732 P.2d at 1040; *see also Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (stating that the fundamental right to privacy does not extend to all kinds of private sexual conduct between *consenting adults*).

■ Ochoa's second assertion of overbreadth is unremarkable. Ochoa argues that our indecent liberties statute reaches protected speech because it proscribes "encouraging" a child to engage in immoral conduct. A statute which has as its target constitutionally unprotected conduct but could be construed as impermissibly constraining some protected right must be substantially overbroad to void the statute. *Secretary of State of Maryland*, 467 U.S. at 964–65, 104 S.Ct. at 2851. Additionally, the claimant must also demonstrate that the statute is unconstitutional "as applied" to him or her. *Id.*

We are unable to find how this statute might impermissibly proscribe protected speech and even if it does, it does not do so directly or substantially. Ochoa mistaken-

ly argues that our indecent liberties statute makes it criminal to discuss birth control with a minor. This is a gross misinterpretation. The plain language of the statute criminalizes an adult's encouragement to a minor to engage in indecent or immoral conduct. Our indecent liberties statute is intended to protect children from adults eliciting improper sexual activity, not speech. As applied to Mr. Ochoa's situation, there is no claim nor any evidence that his First Amendment rights were affected by our indecent liberties statute. Mr. Ochoa's overbreadth claim to our indecent liberties statute is, therefore, without merit.

### Psychological Reports

Ochoa's final two claims of error challenge his sentencing. First, Ochoa argues that two psychological examination reports were improperly considered during the sentencing process. Second, he argues that the imposition of an indeterminate amount of restitution is reversible error.

During the hearing held on February 21, 1992, in which Mr. Ochoa formally pled nolo contendere, Ochoa and his counsel were informed that the district judge would consider the two psychological reports for sentencing purposes if they wished. The discussion went as follows:

> THE COURT: *It's obvious that I have had an opportunity to review the report from the State Hospital as well as Dr. Miracle's report, so if you wish, I will consider those items as information for sentencing only if you wish.* I have not seen any report from Montana, so I need to make that clear. If you wish for me to use that information in sentencing in this case, I would have to have your agreement to do so and an opportunity to review that information. Otherwise I will act on the basis of whatever information I receive from the records check and, of course, your presentation in sentencing, [defense counsel], but give me advance notice if I need to be prepared to review materials in anticipation of your sentencing presentation on Monday.

[DEFENSE COUNSEL]: Your Honor, I think we have a pretty complete record structure here, and *I think that the Court, for its own guide, should consider it.* [emphasis added]

Additionally, the court, at the sentencing hearing on February 24, 1992, clearly identified everything it was considering in making its sentencing decision, including the two psychological reports.

■ Throughout both of these hearings, Ochoa's counsel never objected to the use of the reports. Therefore, the court's use of the psychological reports can only be reversible if it was plain error. For an error to rise to the level of plain error, the following elements must exist:

(1) the record must demonstrate clearly what occurred at trial without resort to speculation; (2) a clear and unequivocal rule of law must have been violated in an obvious way; and (3) this violation must have adversely affected some substantial right of the accused.

*Buckles v. State,* 830 P.2d 702, 707 (Wyo. 1992), *citing Monn v. State,* 811 P.2d 1004 (Wyo.1991).

■ The State and Ochoa agree that the district court did, in fact, consider the psychological reports for purposes of sentencing. However, Ochoa argues that two clear and unequivocal rules of law were violated in an obvious manner. First, that W.S. 7–11–303(h) was violated and second, that his Fifth Amendment right against compelled self-incrimination and Sixth Amendment right to counsel were abrogated.

The pertinent portion of W.S. 7–11–303(h) provides:

No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any person in the course of the examination or treatment shall be admitted in evidence in any criminal proceeding then or thereafter pending on any issue other than that of the mental condition of the accused.

Because the court clearly informed Ochoa that it would consider these reports and Ochoa consented to the use of the reports in sentencing, he waived objection to their consideration by the court. We cannot say that these actions by the judge result in an obvious violation of W.S. 7–11–303(h).

Ochoa's second allegation of violation of a clear and unequivocal rule of law stems from a line of United States Supreme Court cases which have held

that a capital defendant's Fifth Amendment right against compelled self-incrimination precludes the State from subjecting him to a psychiatric examination concerning future dangerousness without first informing the defendant that he has a right to remain silent and that anything he says can be used against him at a sentencing proceeding.

*Powell v. Texas,* 492 U.S. 680, 681, 109 S.Ct. 3146, 3147, 106 L.Ed.2d 551 (1989); *citing Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *see also Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). In addition, the United States Supreme Court has found a violation of a defendant's Sixth Amendment right to counsel in this same situation. *Powell,* 492 U.S. at 681, 109 S.Ct. at 3147.

It is unclear from the cited United States Supreme Court cases whether there would be a Fifth or Sixth Amendment violation in a non-capital case. Additionally, before the examination by the state hospital, Ochoa was informed that he could decline to answer any specific question which might damage him in a subsequent criminal proceeding. This alleged constitutional error does not rise to plain error because there was no unequivocal rule of law violated in an obvious manner.

### Restitution Provision

■ Ochoa's final argument for error involves the district court's failure to set a specific amount of restitution in the sentence. The State concedes that the imposition of restitution in an indeterminate amount is improper. *See Keller v. State,* 771 P.2d 379 (Wyo.1989). Where the trial court exceeds its sentencing authority and the sentence is divisible, we have the option of remanding for resentencing or simply mandating that the illegal provision be stricken. *Keller,* 771 P.2d at 387. Howev-

er, where the restitution provision of the sentence fails due to a lack of proof at the sentencing, we will not remand for correction unless other portions of the sentence are remanded. *Renfro v. State,* 785 P.2d 491, 493 (Wyo.1990); *see also Fischer v. State,* 811 P.2d 5, 9 (Wyo.1991) (where restitution provision was remanded for recalculation along with the larceny conviction).

In *Kahlsdorf v. State,* 823 P.2d 1184 (Wyo.1991), we held that the defendant had waived the requirement that restitution be based on credible evidence and that it be set in a specific pecuniary amount. *Id.,* at 1195. However, in so holding, we required that there be evidence in the record that the defendant knowingly and voluntarily waived her right to a specific amount of restitution. *Id.,* at 1194. We were able to find sufficient evidence of a knowing and voluntary waiver through the defendant's specific statements at sentencing. *Id.,* at 1194.

We are persuaded that this is not a situation like *Kahlsdorf.* The district court simply explained to Mr. Ochoa why they were not going to set the specific amount of restitution. There is no evidence, like in *Kahlsdorf,* to suggest a knowing and voluntary waiver. Instead we have a situation here where the district court and the prosecutor were aware that sentencing was to proceed but failed to establish a specific amount of restitution and thus left it undetermined.

 Therefore, because there was no waiver to the court setting an unspecified amount of restitution and because of a lack of proof of a proper amount at sentencing, and because there will be no remand of any other provision of the sentence, we must simply strike the indeterminate restitution provision.

### DISPOSITION

The judgment and sentence of the district court is modified by striking therefrom the indeterminate restitution provision; and, as modified, the judgment and sentence of the district court is affirmed.