2001 WY 73

**William Wade SCHMIDT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–160.

Supreme Court of Wyoming.

Aug. 13, 2001.

Rehearing Denied Sept. 4, 2001.

Representing Appellant: Mike Cornia, Evanston, WY. Argument by Mr. Cornia.

Representing Appellees: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General. Argument by Ms. Baker.

1. § 14–3–105. Immoral or indecent acts; penalty.

(a) Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided 0 by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

(b) An actor convicted under subsection (a) of this section shall be punished by life imprisonment without parole if:

(i) The circumstances of the crime involve a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim; and

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ., and DAN SPANGLER, D.J. (Ret.).

HILL, Justice.

[¶ 1] Appellant, William Wade Schmidt (Schmidt), brings this ten-issue challenge to his conviction for immoral and indecent acts [1] with a child under the age of 18 years. In this instance, the female victim was 11 years old.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Schmidt poses these issues for resolution by this Court:

I. Does the lack of an adequate record for appellate review require reversal[?]

II. Whether the admission of the numerous prior consistent statements of the complainant requires reversal[.]

III. Did the trial court correctly instruct the jury as to the essential elements of the crime[?]

IV. Was a lesser included offense instruction required[?]

V. Did the legislature intend that the indecent liberties statute apply to the alleged conduct[?]

(ii) The actor has two (2) or more previous convictions for any of the following designated offenses, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere:

(A) A conviction under W.S. 6–2–302 through 6–2–304 or a criminal statute containing the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304;

(B) Repealed by Laws 1997, ch. 135, § 2.

(C) A conviction under W.S. 14–3–105(a), or a criminal statute containing the same or similar elements as the crime defined by W.S. 14–3–105(a), if the circumstances of the crime involved a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim.

(c) As used in this section, "child" means a person under the age of eighteen (18) years.
Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2001).

VI. Is W.S. § 14–3–105 void for vagueness in that it allows or invites the jurors to follow their personal predilictions [*sic*] in deciding guilt or innocence[?]

VII. Is it a violation of the Appellant to equal protection under the Federal and Wyoming Constitutions[?]

VIII. Was the admission of prior inconsistent statements plain error[?]

IX. Did the limitation of cross-examination of the complaining witness deny the Appellant his right to confrontation[?]

X. Was the Appellant denied his right to effective assistance of counsel

In response, the State summarizes the issues thus:

I. Whether the record is adequate for appellate review?

II. Whether the trial court's evidentiary rulings were correct?

III. Whether the trial court properly instructed the jury?

IV. Whether Appellant was properly charged and convicted under the indecent liberties statute?

V. Whether Appellant received effective assistance of counsel?

## FACTS

[¶ 4] The evidence at trial showed that at about 1:00 p.m. on Saturday, June 19, 1999, the victim went to Schmidt's home to play with his children, something she frequently did. On that date, she was 11 years of age. When she arrived at the Schmidt household, Schmidt's wife and children were just leaving to go swimming, so the victim returned home. However, the weather had turned to thunderstorms and rain so the victim returned to the Schmidt home because she thought her friends would be returning home soon. She was waiting under a tree in the front yard for her friends to return when Schmidt came out of the house and invited her to come inside. The victim entered the house, and for a few minutes she and Schmidt watched TV. However, because the TV reception was not good, Schmidt turned the TV off and began asking the victim a series of questions. First, he asked if the victim had started puberty, and, not knowing what that meant at that time, she apparently did not answer the question. Schmidt then asked her if she had ever shown anyone her private parts, and the victim answered, "No." At this point, the victim stated she felt scared. Schmidt next asked if she would show her private parts to him, and she again answered, "No." At this point, the victim indicated that she felt "scareder." Next, Schmidt asked the victim if she knew the names of a woman's private parts, and she again answered, "No." Undeterred, Schmidt then asked the victim if she would like to see a book on that subject. The victim initially answered "No," but when Schmidt persisted, she said, "Okay." He left the room and returned with a magazine. Schmidt showed the magazine to the victim and used the words "lips and clip" to describe a woman's private parts. The victim used these words to describe the pictures she was shown by Schmidt:

A. One picture had a line going through it like this and the top picture had a woman spreading her private part open with a man's private part in hers and then on the bottom, it showed his private part all the way in hers.

Q. Were there any other pictures near that one that you saw?

A. Yes.

Q. What did the other picture look like?

A. It had a picture of a—a cliff with a sunset in the background and a tree next to a guy with a woman over his shoulder.

[¶ 5] The victim also indicated that the woman in the picture did not have clothes on and that the man was dressed in armor. Later evidence demonstrated that the victim accurately described photographs from a *Penthouse* magazine that was seized from Schmidt's bathroom during a search pursuant to warrant of the Schmidt household.

[¶ 6] Next, Schmidt sat down on a couch in his living room and asked the victim if she had ever seen a man's private part, and she said, "No." He then asked her if she would like to see his private part. The victim testified that she felt "scared" but replied, "I guess so," because she felt frightened and

"didn't know what to do." To cut this sordid litany short, Schmidt then pulled down his shorts and masturbated in the victim's presence. The victim then left the Schmidt house and returned home.

[¶ 7]   Two of Schmidt's issues relate to the introduction in evidence of prior consistent statements of the victim, as well as prior inconsistent statements of members of Schmidt's family. For this reason, it is appropriate that we note at this juncture that, in his opening statement, Schmidt's attorney posited that the evidence to be presented by the defense would show that it was not possible that the events described by the victim could have taken place, *i.e.*, that she was making it all up.

[¶ 8]   The victim returned home, washed the dishes, and then went to bed because she felt "sick and yuckie." The next day, which was Father's Day, June 20, 1999, the victim related the events described above to her cousin, who was staying at the victim's home. That cousin testified and repeated what she had been told by the victim. The cousin also testified that the victim was usually "always happy," but on June 20th she was "crying real bad" and was having trouble breathing.

[¶ 9]   The victim's stepsister also testified and related that on June 19th, the victim came home and went to bed saying she was sick and the following day related the story of what Schmidt did to her. The stepsister also testified that the victim insisted on having her bedroom window closed, even though it was hot, because if it were open, "he [Schmidt] would be able to come inside our room and kill her because she told or get her because she told."

[¶ 10]   The victim also told her Father of the above-described events, and he testified about what she had told him and what his reactions were. He also described her dramatic change in mood and behavior following the June 19th incident, including fear of reprisal from Schmidt. On the day his daughter told him of the incident, the Father went to the Schmidt house and confronted Mrs. Schmidt about the incident, because Mr. Schmidt was not available (he was in the shower). This confrontation created some confusion for the Schmidts because the Fa-

ther was, at that time, under the impression that the incident had happened on June 20th, rather than June 19th.

[¶ 11]   Joyce Coffey, an elementary school guidance counselor with a Master's Degree in counseling, who also had considerable training and experience dealing with children that are the victims of molestation, testified about some of the characteristics of the instant victim in particular, as well as some of the characteristics noted in molestation victims in a more general sense. David Thorne, an employee at Southwest Counseling Service, provided similar expert testimony. During his testimony, another prior consistent statement given by the victim was presented to the jury by means of the reading of a portion of a transcript wherein the victim was interviewed by a Child Advocacy Team. That statement was consistent with her testimony during the trial, as well as her other prior consistent statements set out more fully above.

[¶ 12]   Several members of Schmidt's family testified in the defense portion of the trial. Schmidt himself testified briefly, and his testimony was to the effect that he arrived at home from work at about 7:15 a.m. on June 19th, ate breakfast, and then slept until about 4:00 p.m. (which would have him home asleep when the events described by the victim occurred). Schmidt's wife testified that she was home all day on June 19th, except for one hour between 1:00 p.m. and 2:00 p.m. She also testified that her stepson was at home watching a movie when she left at 1:00 p.m. and was still home watching that same movie when she returned an hour later (although she did concede she could not know whether or not he was home for the hour she claimed to be gone).

[¶ 13]   Schmidt's son testified that he was home all day on June 19th, and his testimony strongly suggested that the events described by the victim could not have occurred. However, the son was impeached with a prior inconsistent statement he had given at, or very near, the time of the incident wherein he related that he had been gone from home at the time the events testified to by the victim occurred. As a general matter, even

the cold record strongly suggested that his testimony was not truthful.

[¶ 14]   Schmidt's niece testified and one point made in her testimony was that the victim and Schmidt's son had a two-day long "girlfriend-boyfriend" relationship and that the son had broken off that relationship (suggesting a motive for the victim to lie). The niece initially verified that they were only gone from the house for one hour (to go swimming). She also conceded that, at an earlier time, she had told police that the son could have gone out to the desert bike riding. The niece also admitted that she had talked about the scenario(s) of June 19th with other family members and that her testimony reflected what she had been told by her family. A police officer testified that in her original statement to the police, the niece had said they were gone from the house from 1:00 p.m. until 4:30 p.m. on June 19th. In summary, while the testimony of the various Schmidt family members tended to create an "alibi" for Schmidt, their testimony could easily have been viewed by the jury as lacking in credibility.

### DISCUSSION

*Inadequate Record*

[¶ 15]   As his first issue, Schmidt contends that his conviction must be reversed because the record is not complete. Schmidt asked that all proceedings be transcribed but he contends that "at least one pretrial hearing or conference" was not reported, that three bench conferences were not reported, and "it appears that there were unreported instruction conferences." In *Bearpaw v. State*, 803 P.2d 70 (Wyo.1990), relying on *Richardson v. State*, 15 Wyo. 465, 89 P. 1027 (1907), we reversed a defendant's conviction because of a failure to transcribe the impaneling and voir dire of the jury, failure to report the preparation of instructions, failure to transcribe the instructions read to the jury, and failure to transcribe opening and closing argument. It was later determined that the source material for such transcripts (reporter's notes) had been destroyed, so the record could not be recreated. The final result in *Bearpaw* was recognition that where, through no fault of defendant,

the record cannot be prepared or certified by the court reporter, a new trial will be granted. *Bearpaw*, 803 P.2d at 79.

[¶ 16]   W.R.A.P. 3.02 provides:

(a) Transcripts in criminal and juvenile matters shall consist of all proceedings including, but not limited to, voir dire, opening statements and final arguments, conferences with the presiding judge, in addition to the testimony of the case and other essential materials.

. . . .

(d) All transcripts of testimony, evidence and proceedings shall be certified by the official court reporter, or such other person designated by the trial court to prepare the transcript, to be true and correct in every particular, and when certified it shall be received as prima facie evidence of the facts, testimony, evidence, and proceedings set forth in the transcript[.]

[¶ 17]   W.R.Cr.P. 55 provides:

(a) In the district court, the court reporter shall report all testimony and all proceedings held in open court including but not limited to voir dire, opening statements, motions and final arguments, as well as conferences with the presiding judge in open court and in chambers. Informal discussions, informal instruction conferences and pre-trial conferences shall be reported when requested by a party.

(b) In circuit court, justice of the peace court and municipal court, all testimony and all proceedings held in open court including but not limited to voir dire, opening statements, motions and final arguments, as well as conferences with the presiding judge in open court and in chambers, shall be recorded by electronic means. Informal discussions, informal instruction conferences and pre-trial conferences shall be recorded when requested by a party. At their own expense, any party may have proceedings reported by a court reporter.

[¶ 18]   We also take note that Wyo. Stat. Ann § 5-3-404 (LexisNexis 2001) provides:

The court reporter for criminal cases prosecuted in the district court shall report

all testimony and all proceedings held in open court, except informal discussions, informal instruction conferences and pretrial conferences which shall be reported when requested by a party. The reporter shall, within a reasonable time [2], transcribe arraignment, plea, change of plea and sentencing hearings and file the transcript in the official court record.

[¶ 19] Here, the record reflects that informal discussions probably had occurred with respect to instructions. However, it is equally clear that *the* instructions conference is on the record. It is a brief conference, and brevity may often be the case where the trial court, as was the case here, had done an excellent job of weeding through offered instructions and preparing a comprehensive and properly constituted set of instructions.

[¶ 20] Schmidt speculates that a motions conference was not reported or transcribed. However, it is never identified with anything resembling specificity nor does he allege any specific prejudice. As noted above, informal discussions are not required to be reported or transcribed. If informal discussions result in a need for a record of what transpired during the informal meeting, counsel can, and often do, ask that the matter be reconsidered and placed on the record with the reporter in attendance. Schmidt also contends that "at least three" bench conferences were not reported. The same analysis set out above applies to this contention. Schmidt's assertions of error in this regard do not bring him within the rule of *Bearpaw,* and his right of appeal was not infringed by an inadequate record.

*Admission of Victim's Prior Consistent Statements*

■ [¶ 21] Schmidt embarks on this argument by stating that defense counsel "did not in any way imply that [the victim] was fabricating the incident in his opening statement." This is so patently incorrect that it renders a detailed further discussion virtually unnecessary. As noted above in our recitation of the facts, we deem it unmistakable

that defense counsel indicated in opening statement that the defense would show the incident, as described by the victim, did not take place ("... so at no time during this occasion is there an opportunity, I believe, for the things that are alleged to have occurred to have occurred."). Moreover, in testimony, the defense offered evidence that the victim may have had an improper motive (the break up of the romance between the victim and Schmidt's son). The testimony of Schmidt's family was to the effect that there was no possibility that the victim was ever alone with Schmidt on the date alleged in the information. Thus, we quite readily conclude that the admission of the victim's prior consistent statements was well within the letter of W.R.E. 801(d)(1)(B). *Also see Alicea v. State,* 13 P.3d 693, 698–99 (Wyo.2000). In addition, Schmidt asked for no limiting instruction concerning the use of prior consistent statements as substantive evidence. *Id.* at 699.

*Inadequate Elements Instruction*

[¶ 22] Schmidt maintains that the trial court failed to fully instruct the jury as to the elements of the crime. The district court gave these instructions:

### INSTRUCTION NO. 12

The elements of the crime of Taking Immodest, Immoral or Indecent Liberties with a Child, as charged in this case, are:

1. On or about the 19th day of June, 1999
2. In Sweetwater, County Wyoming. [*sic*]
3. The Defendant, WILLIAM WADE SCHMIDT
4. Knowingly
5. Took immodest, immoral or indecent liberties
6. With [the victim], a child.

If you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable

---

2. U.R.D.C. 906 sets the "reasonable time" at 60 days, subject to extension by the district court for good cause shown (except that such an extension may not conflict with any deadlines incident to an appeal).

doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

INSTRUCTION NO. 14

"Immodest, Immoral or Indecent Liberties" is defined as:

Actions which are such as the common sense of society would regard as indecent and improper and a person of ordinary intelligence can weigh contemplated conduct against that prohibition.

INSTRUCTION NO. 10

The intent with which an act is done is a condition of the mind that is seldom, if ever, capable of direct and positive proof. Because we have no power to directly observe the condition of a person's mind, the best we can do is infer it from the evidence introduced.

The jury may consider the circumstances surrounding the act, the doing of the act itself, the manner in which it was done and the means used.

[¶ 23] The applicable standard of review is well-established: Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts; instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct; a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction; the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed. *Metzger v. State,* 4 P.3d 901, 908 (Wyo. 2000).

[¶ 24] We embark upon our consideration of this issue noting that Schmidt does not claim that the trial court failed to include an element of the crime. Rather, Schmidt contends that the trial court failed to give an instruction defining "knowingly," which is an element of the crime. He did not object to the instructions given at trial nor did he offer an instruction with the proposed definition. Therefore, we review this claim under the plain error doctrine. *Lane v. State,* 12 P.3d 1057, 1060 (Wyo.2000). That doctrine requires us to make this series of findings: (1) The record must clearly present the incident, (2) appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way, and (3) that appellant was denied a substantial right resulting in material prejudice to him. *Metzger,* 4 P.3d at 906. In this context, "knowingly" has no technical meaning under the law, which is different from its ordinary meaning, and the trial court was not required to define it. *See Lane,* 12 P.3d at 1062. Moreover, the issue was never presented to the district court, so the record does not reflect it at all; Schmidt cites us to no clear and unequivocal rule of law that was violated, and he makes no mention of how he was prejudiced by the trial court's asserted lapse. The claimed error is not a plain error. Indeed, it is no error at all.

[¶ 25] In addition, Schmidt contends that the content of Instruction No. 14 provides inadequate guidance to the jury. No cogent argument or pertinent authority accompanies this contention, and we will not consider it further except to note that this contention is related to Schmidt's constitutional challenges to the indecent liberties statute, which we will discuss in more detail in a later section of this opinion. *Statezny v. State,* 2001 WY 22, ¶ 11, 18 P.3d 641, ¶ 11 (Wyo.2001); *Eustice v. State,* 11 P.3d 897, 904 (Wyo.2000).

*Lesser Included Offense Instructions*

[¶ 26] Although Schmidt did not offer any lesser-included offense instructions at trial, he asserts such instructions should have been given. Specifically, Schmidt contends that public indecency, as prohibited by Wyo.

Stat. Ann. § 6–4–201 (LexisNexis 2001),[3] and promoting obscenity, as prohibited by Wyo. Stat. Ann. § 6–4–302 (LexisNexis 2001),[4] are lesser included offenses of indecent liberties. As we did immediately above, we will initially test this claim against the plain error standard. The record clearly reflects that no such instructions were offered and no such theory of defense was pursued in the trial court. Schmidt contends that the record is not complete; however, we are fully satisfied that it is complete. The Wyoming Rules of Appellate Procedure provide mechanisms for completing the record if the record is, in fact, incomplete. W.R.A.P. 3.03 and 3.04. We do not view Schmidt's failure to utilize these mechanisms as an oversight by counsel. It is clear from the record that any "missing" portions of the record are a figment of appellate counsel's imagination. In addition, Schmidt cites us to no clear and unequivocal rule of law that was violated nor does he make mention of how he was prejudiced by the trial court's asserted lapse in not giving such instructions *sua sponte*. Clearly, the crime of public indecency is not applicable to the factual circumstances of this case (requires that the act be committed in a public place where the actor may reasonably be expected to be viewed by others). The crime of promoting obscenity may be applicable but only in the sense that Schmidt might well have been charged with violating that statute

as an additional count. The error is not a plain error. Indeed, it is no error at all.

*Conviction Exceeds Legislative Intent*

[¶ 27]   Schmidt contends that his prosecution exceeds the intent we may ascribe to the legislature with respect to the reach of the indecent liberties statute. In addressing this argument, it is contended that the "simple exposure of an adult's intimate parts to a child" should not be included within its reach. Such "simple exposure" may well be within its reach but we are dealing here with considerably more than "simple exposure." This is an issue that we have visited frequently over the years, and it is one we will discuss further in Schmidt's constitutional challenges to the indecent liberties statute. We have opined in a related circumstance that it is not necessary that the child's private parts be subjected to the misconduct, and some acts, which may not be indecent in themselves, may be made so by words and circumstances. *Roberts v. State*, 912 P.2d 1110, 1112 (Wyo. 1996). We now specifically adopt that axiom to apply in the circumstances of this case, as well as other similar cases that may come our way. Before we move forward to other issues, we note that the indecent liberties statute has been a part of Wyoming law for almost 45 years. 1957 Wyo. Sess. Laws ch. 220, § 8. Regrettably, we have had far too many opportunities to construe the reach of

3.  Section 6–4–201 states:
    (a) A person is guilty of public indecency if, while in a public place where he may reasonably be expected to be viewed by others, he:
    (i) Performs an act of sexual intrusion, as defined by W.S. 6–2–301(a)(vii); or
    (ii) Exposes his intimate parts, as defined by W.S. 6–2–301(a)(ii), with the intent of arousing the sexual desire of himself or another person; or
    (iii) Engages in sexual contact, as defined by W.S. 6–2–301(a)(vi), with or without consent, with the intent of arousing the sexual desire of himself or another person.
    (b) Public indecency is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both.

4.  Section 6–4–302 states:
    (a) A person commits the crime of promoting obscenity if he:
    (i) Produces or reproduces obscene material with the intent of disseminating it;

    (ii) Possesses obscene material with the intent of disseminating it; or
    (iii) Knowingly disseminates obscene material.
    (b) Promoting obscenity is a misdemeanor punishable upon conviction as follows:
    (i) If to an adult, by a fine not to exceed one thousand dollars ($1,000.00) or by imprisonment for not to exceed one (1) year, or both;
    (ii) If to a minor, for each violation, by a fine not to exceed six thousand dollars ($6,000.00) or by imprisonment for not to exceed one (1) year, or both.
    (c) This section shall not apply to any person who may produce, reproduce, possess or disseminate obscene material:
    (i) In the course of law enforcement and judicial activities;
    (ii) In the course of bona fide school, college, university, museum or public library activities or in the course of employment of such an organization.

that statute, and we have uniformly given it broad application. The circumstances proven at trial are unmistakably a violation of that statute, and any person of ordinary intelligence, including Schmidt, is capable of recognizing it as such.

*Statute is Unconstitutional as Vague and Denying Equal Protection*

[¶ 28]  Appellant revisits several constitutional challenges to the indecent liberties statute. We will limit our discussion of that issue to a reference to some of our cases wherein we have held that the statute is not void for vagueness or otherwise unconstitutional. *Pierson v. State*, 956 P.2d 1119, 1123–24 (Wyo.1998); *Moore v. State*, 912 P.2d 1113, 1116 (Wyo.1996); *Lovato v. State*, 901 P.2d 408, 412–13 (Wyo.1995); *Ochoa v. State*, 848 P.2d 1359, 1362–64 (Wyo.1993). Schmidt offers us nothing new or otherwise persuasive that would cause us to reconsider or reverse our holdings as to the constitutionality of that statute.

*Admission of Prior Inconsistent Statements was Plain Error*

[¶ 29]  In our statement of the facts, we set out the testimony of Schmidt's son and niece. In its rebuttal case, the State called a police officer to testify that the statements those individuals gave at or near the time of the crime were considerably different and much more incriminating to Schmidt (and both of the witnesses were aggressively cross-examined in this regard). Schmidt concedes that no objections were made to the elicitation of the prior inconsistent statements. Therefore, we must apply the plain error doctrine, which is set out above. In this instance, the record clearly reflects the incident alleged to be error. However, Schmidt fails to demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way or that he was denied a substantial right resulting in material prejudice to him. *Metzger*, 4 P.3d at 906. Indeed, we have previously found that such a circumstance fails to qualify as plain error under very similar circumstances. *Monn v. State*, 811 P.2d 1004, 1006–7 (Wyo.1991). The testimony of

Schmidt's son lacked credibility, and that was readily evident at the end of the State's cross-examination of him. The niece virtually admitted under cross-examination that her direct testimony was what she was told by her family to say, rather than the truth. The admission of the prior inconsistent statements was likely not error, but it is without a doubt not plain error.

*Limitation of Cross–Examination of the Victim*

[¶ 30]  Schmidt contends that the district court erroneously limited defense counsel's ability to cross-examine and, hence, to confront the victim (complaining witness). The defense sought to inquire of the victim whether victim's Mother had ever related to her a story that something similar had happened to her. The thrust of this questioning was to establish a basis for the victim's fabrication of her story, *i.e.*, that the things she said had happened did not happen to her, but to her Mother (or were otherwise suggested by her Mother's experience). The Mother was not called as a witness. In addition, the victim was merely asked if she had talked to her Mother and she answered, "Yes." Defense counsel then asked, "And your mother had a problem when she was little?" The question was, at best, unfocused as to any particular "problem," and the trial court appropriately sustained an objection based on the question being beyond the scope of direct. Defense counsel also asked if the victim knew "anybody else that this happened to." Again, the question is very unfocused as to what "this" exactly meant and, in addition, the question called for hearsay that might have included W.R.E. 404(b) evidence. The trial court correctly sustained the State's objection to that question. Schmidt posits this issue in the context of a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution and art. 1, § 10 of the Wyoming Constitution. Here, he had a full and complete opportunity to confront the victim. If he failed to fully avail himself of that opportunity through inartful and objectionable questioning, then that is a matter relating to the admission of evidence, not the Confrontation Clause. Moreover, the witness the defense really

wanted to confront was the victim's Mother, and she was available to the defense by way of subpoena. Finally, there is nothing in this record by way of an offer of proof that suggests that this line of questioning would have produced any admissible evidence for the defense in any event. In summary, we do not perceive that the trial court erroneously limited the defense in its opportunity to cross-examine or to confront the victim.

### Denial of Right to Effective Assistance of Counsel

■ [¶ 31] Schmidt claims that he was denied his right to effective assistance of counsel because his trial counsel: (1) Failed to request lesser included offense instructions, (2) failed to object to the limitation on his cross-examination of the victim, (3) failed to point out that he had not made a charge of recent fabrication (and thus prior consistent statements of the victim were not admissible), (4) failed to object to the prior inconsistent statements of Schmidt's son and niece, and (5) did not challenge the constitutionality of the indecent liberties statute or offer an instruction to the effect that "something more than indecent exposure was required" to sustain a conviction under that statute.

■ [¶ 32] Our standard of review with respect to this issue counsels that the paramount determination is whether, in light of all the pertinent circumstances, trial counsel's acts or omissions were outside the range of professionally competent assistance. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. An appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted. We also inquire as to whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Chapman v. State,* 2001 WY 25, ¶ 6, 18 P.3d 1164, ¶ 6 (Wyo. 2001); *Pearson v. State,* 12 P.3d 686, 691–92 (Wyo.2000).

[¶ 33] In this instance, we find no error in defense counsel's failure to request lesser-included offense instructions because neither instruction would have constituted a lesser-included offense instruction. The trial court properly limited cross-examination of the victim, and ineffective assistance of counsel is not implicated in the failure to object to that limitation. Trial counsel did make a charge of recent fabrication. Defense counsel's failure to object to the prior inconsistent statements of Schmidt's son and niece is likewise unavailing in this regard because the district court's admission of them does not meet the plain error standard. Finally, defense counsel's failure to challenge the constitutionality of the indecent liberties statute, or to offer an instruction to the effect that "something more than indecent exposure was required" to sustain a conviction under that statute, was nothing more than trial counsel's recognition that the law is, in those respects, well-settled.

### CONCLUSION

[¶ 34] The judgment and sentence of the district court are affirmed in all respects.