Henry R. GRIEGO, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–85.

Supreme Court of Wyoming.

Sept. 15, 1988.

Daniel E. White of Vines, Gusea &
White, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Paul S. Rehurek, Asst. Atty. Gen., (argued), for appellee.

Before CARDINE, C.J., THOMAS and URBIGKIT, JJ., and BROWN, J. Ret.[*], and JOFFE, District Judge, Ret.

CARDINE, Chief Justice.

Appellant was convicted of taking immodest, immoral, or indecent liberties with a child, § 14-3-105, W.S.1977, and was sentenced to a six-month term in the Laramie county jail. He presents the following issues on appeal: (1) Whether the court erred in denying his motion to dismiss by (a) failing to find that § 14-3-105 is unconstitutionally vague, (b) failing to rule that § 14-3-105 has been impliedly repealed by § 6-2-305, (c) failing to rule that appellant should have been charged under § 6-2-305 because it is a special statute which stands as an exception to § 14-3-105, which is a general statute, and (d) in finding that probable cause existed; (2) whether the court erred in admitting the testimony of Sandra Minnick, the State's expert witness; and (3) whether the court erred in refusing to instruct the jury on a lesser-included offense.

We affirm.

## FACTS

On July 26, 1986, the fourteen-year-old victim was babysitting several children at the home of Ms. Nan Thiessen in rural Laramie County. Ms. Thiessen was planning to attend a show with several friends and members of her family who were staying at her home. Appellant was dating Ms. Thiessen at the time. He was at her home that evening. He had initially planned to attend the show with Ms. Thiessen and the others, but Ms. Thiessen had sold his ticket following an argument between them two weeks earlier.

Ms. Thiessen and her friends left the house at about 6:00 p.m. Appellant stayed behind. After the victim put the children

to bed, she went downstairs where appellant was watching a movie on television. Appellant told her that the movie was getting boring and asked her if she had ever seen a "porno" before. She said she had seen about five seconds of one while flipping through the channels at a friend's house. Appellant then put on a video entitled "Hollywood Hot Tubs."

After appellant and the victim had watched the video for about fifteen to twenty minutes, she began to feel uncomfortable. She went upstairs and tried, unsuccessfully, to telephone a friend. She then returned downstairs and sat on the couch. Appellant asked her how old she was, and she told him she was fourteen. Then he asked if her sister's breasts were as big as the girl's on television. She told him that she did not think so. Appellant offered her a beer, and she declined. Appellant told her that she had a nice figure for her age. The victim then went upstairs and tried again to call her friend. She was again unsuccessful. She checked on the children and went back downstairs.

Appellant then told her that he had recently hurt his back and asked her to give him a back rub. She complied. While she was giving appellant a back rub, appellant told her that she had strong hands and a sexy voice. She began to feel uncomfortable and sat back on the couch. Appellant asked her if she wanted a back rub. She initially declined, but then appellant gently pulled her off the couch by her arm and began rubbing her back. The victim told appellant "that's enough" and started to get up, but appellant pushed her back onto the floor. At this point the victim was on her back. Appellant pulled up her shirt and bra and told her, "I know something that feels real good." Appellant began fondling her breasts and sucking on them. He also engaged in an activity which the victim later described as "dry humping." She told him, "that's enough," got up, and pulled her shirt down. She walked upstairs and tried once again to reach her friend. Once again she did not succeed.

* Retired June 30, 1988, but continued to participate in the decision of the court in this case pursuant to order of the court entered July 1, 1988.

At this point Ms. Thiessen came home to drop off a friend who had hurt her ankle. Ms. Thiessen paid the victim and asked if she wanted a ride home. The victim said she was waiting for someone to pick her up. Ms. Thiessen left again, but appellant did not. He went downstairs where the victim was sitting on the couch. Appellant then pulled her into a hallway and started kissing her and tried to put his hands under her shirt. He also started to pull her towards a bedroom. She said, "no," and walked away. Appellant told her not to tell anyone. She went upstairs and tried once again to call her friend. This time she succeeded, and her friend picked her up about fifteen minutes later.

That night, the victim told her friend what had happened. The next day the victim's parents were told of the incident, and they contacted the sheriff's department. Appellant was questioned by a sheriff's deputy on July 28, 1986, and he gave a written statement.

About one month later, a criminal complaint was filed against appellant. He filed a motion to dismiss in the county court, which was denied. The motion was renewed in the district court, where it was again denied. After a two-day trial, a jury found appellant guilty of taking indecent liberties with a child. He was sentenced to a six-month term in the county jail.

## VAGUENESS

Appellant contends that the indecent liberties statute, § 14–3–105, is unconstitutionally vague. We addressed a similar challenge in *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979), under facts similar to this case. We decline appellant's invitation to overrule Sorenson. The United States Supreme Court has said that a penal statute must

"define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

A statute may be challenged for vagueness "on its face" or as applied to particular conduct. When a statute is challenged for vagueness on its face, the court examines the statute not only in light of the complainant's conduct, but also as it might be applied in other situations. See *Schwartzmiller v. Gardner*, 752 F.2d 1341 (9th Cir.1984). Facial review is not appropriate in all cases.

"[F]acial vagueness review is not common because ordinary canons of judicial restraint do not permit a party whose particular conduct is adequately described by a criminal statute to 'attack [the statute] because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit.'" (Emphasis omitted.) Id. at 1346 (quoting *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974)).

This principle is sometimes described in terms of standing. *Parker v. Levy*, supra 94 S.Ct. at 2561; *State v. Hegge*, 89 Wash. 2d 584, 574 P.2d 386, 389 (1978).

The standing requirement is relaxed when a statute reaches "a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Kolender v. Lawson*, supra 103 S.Ct. at 1855. The requirement is also relaxed when a statute is shown to be vague "'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Parker v. Levy*, supra 94 S.Ct. at 2561 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)). See also *Schwartzmiller v. Gardner*, supra 752 F.2d 1341.

■ Appellant does not argue that the indecent liberties statute reaches any constitutionally protected conduct. Consequently, we will entertain a facial challenge only if the statute is one in which "no standard of conduct is specified at all." *Parker v. Levy*, supra 94 S.Ct. at 2561.

We conclude that the indecent liberties statute does not fall within that category. Instead it is one which "by [its] terms or *as authoritatively construed* [applies] without question to certain activities, but whose application to other behavior is uncertain." (Emphasis added.) *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974); *Parker v. Levy,* supra 94 S.Ct. at 2561.

The Wyoming indecent liberties statute has been construed to apply to certain types of specific conduct in several cases. *McArtor v. State,* Wyo., 699 P.2d 288 (1985); *AuClair v. State,* Wyo., 660 P.2d 1156 (1983); *Ketcham v. State,* Wyo., 618 P.2d 1356 (1980) (all three cases involved sexual intercourse); and *Sorenson v. State,* supra 604 P.2d 1031 (breast fondling). These decisions demonstrate that § 14-3-105 applies, without question, to certain activities.[1] Consequently, the statute is "not so vague as to specify 'no standard of conduct at all' in any application." See *Schwartzmiller,* supra 752 F.2d at 1348. We will not entertain a facial challenge in this case.

■ We must next decide whether the statute is unconstitutionally vague as applied to appellant's conduct. In making this determination we must decide whether the statute provides sufficient notice to a person of ordinary intelligence that appellant's conduct was illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement. When evaluating a statute to determine whether it provides sufficient notice, we must again consider not only the statutory language. but also any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct. *Ward v. Illinois,* 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977); *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Wainwright v. Stone,* 414 U.S.

21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). If the statute has been previously applied to conduct identical to that of appellant, he cannot complain that notice was lacking. See *Schwartzmiller,* supra 752 F.2d at 1348–49; *Rose v. Locke,* supra. In *Sorenson,* supra, § 14-3-105 was applied to conduct which was substantially identical to appellant's conduct in this case (breast fondling). Given this application of the statute, ordinary people would understand that appellant's conduct fell within the statute.

In addressing the danger of arbitrary and discriminatory enforcement, the Supreme Court has said that

"if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (quoted in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* supra 102 S.Ct. at 1193).

There is no evidence in this case of arbitrary or discriminatory enforcement or the delegation of basic policy matters to the police, the judge, or the jury. Although one might envision hypothetical, marginal applications of § 14-3-105 in which these problems could possibly occur, this case is not among them. We hold that § 14-3-105, as applied to appellant's conduct in this case, is not unconstitutionally vague.

### IMPLIED REPEAL

■ Appellant next contends that the indecent liberties statute has been impliedly

---

1. In order to dispel any confusion regarding our resort to judicial opinions in a so-called "facial" vagueness challenge, we offer the following illuminating comments from an oft-cited student note on the subject of vagueness:

"The statement that a litigant is attacking a statute 'on its face' is one of multiple mean-

ings. As used in the vagueness cases, it does not mean that the statute as written, as opposed to state court construction of it, is being tested."

Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 109, n. 224 (1960).

repealed by the fourth degree sexual assault statute, § 6-2-305, W.S.1977. We rejected a similar argument in *McArtor v. State*, supra 699 P.2d 288. The law of repeals by implication is set out in *Nehring v. Russell*, Wyo., 582 P.2d 67, 73 (1978):

> "Repeals by implication are not favored and while such implicit repeals have at times been found, the party so asserting bears 'the burden of demonstrating beyond question that the legislative body by its later action evinced an unequivocal purpose of effecting a repeal.' What must be shown is that the latter statute is so repugnant to the earlier one that the two cannot stand together, or that the whole subject of the earlier statute is covered by the latter one having the same object, clearly intending to prescribe the only rules applicable to the subject." (Citations omitted.)

In this case, the legislative intent is clearly expressed in the language of the fourth degree sexual assault statute, which provides:

> "*Except under circumstances constituting a violation of W.S. 14-3-105*, any actor who subjects a victim to sexual contact under any of the circumstances of W.S. 6-2-302(a)(i) through (iv) or 6-2-303(a)(i) through (iv) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim commits sexual assault in the fourth degree." (Emphasis added.) Section 6-2-305, W.S.1977.

The prefatory language, which was added to the statute in 1984, clearly indicates that the fourth degree sexual assault statute does not prescribe "the only rules applicable to the subject." *Nehring v. Russell*, supra 582 P.2d at 73. Instead, the legislature intended that, when the elements of fourth degree sexual assault are present and the victim is a child, an offender may be charged with violating the indecent liberties statute. Section 14-3-105 was not impliedly repealed by § 6-2-305.

■ Nor is § 6-2-305 a special statute which constitutes an exception to § 14-3-105. While it is true that a special statute controls over a general statute on the same subject matter, this is a rule of statutory construction that comes into play only for the purpose of determining legislative intent. *McArtor v. State*, supra 699 P.2d at 293. In this instance the legislature's intent, as reflected in the plain language of the 1984 amendment, could not be more clear.

## PROBABLE CAUSE

■ Appellant filed a motion to dismiss in the county court on the ground that he was improperly charged with indecent liberties and could only be charged with fourth degree sexual assault. The county judge denied the motion, stating:

> "Where there is no violence or threats, I believe the preliminary courts should have discretion to explore the facts and circumstances of the case and reduce the charge where the evidence indicates the crime is mischarged.
>
> "Today we do not have this discretion nor can we take into consideration the testimony that would establish these facts. See *State v. Carter.* [Wyo.] 714 P.2d 1217 [1986]. * * * Be that as it may, we cannot and should not expand a preliminary hearing into a mini-trial. It is not dictum that we deal with here, it is the discretion of the prosecutor and a direct edict that if children are involved, our courts shall not question motives, intent or circumstances."

According to appellant, this language invalidates the court's finding of probable cause for an indecent liberties offense. We disagree. If the county court had said that it did not have the authority to dismiss a charge when probable cause had not been demonstrated, appellant's argument would carry considerably more weight. But this was not the position taken by the county court. Instead, the court correctly recognized that it had no authority to legislate or exercise prosecutorial discretion. We find no error in the probable cause determination.

## EXPERT TESTIMONY

Over appellant's objection, the trial court permitted Mrs. Sandra Minnick, coordinator

of Safe House Sexual Assault Services, to testify for the State. Mrs. Minnick holds a master's degree in psychology and has had extensive training and experience in counseling victims of sexual assault and abuse, many of them adolescents. Mrs. Minnick had met with the victim in this case approximately five times. In her testimony, Mrs. Minnick identified typical behavior patterns of adolescent victims of sexual assault and abuse. She said that it was common for adolescent victims to remain in the area of the offender and while it was uncommon for them to tell an adult or parent about the incident, they will usually confide in a friend. Mrs. Minnick further testified that the behavior of the victim in this case was consistent with the typical pattern.

■ At trial, appellant objected to this testimony on the ground of insufficient foundation. Appellant now abandons this argument, choosing instead to assert that the admission of Mrs. Minnick's testimony was plain error because it was irrelevant, overly prejudicial and not helpful to the jury. In order to establish plain error, appellant must satisfy three criteria:

> "First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him." *In the Interest of CB*, Wyo., 749 P.2d 267, 268–69 (1988).

We conclude that appellant has failed to demonstrate plain error.

Appellant contends that the testimony concerning a typical reaction to a sexual assault was irrelevant because the defendant was charged with indecent liberties and not sexual assault. This contention is meritless. As appellant correctly and strenuously argues in various parts of his brief, the circumstances surrounding a sexual assault are highly similar to those surrounding an indecent liberties offense. Rule 401, W.R.E. defines relevant evidence as

> "[e]vidence having any tendency to make the existence of any fact that is of conse-

quence to the determination of the action more probable or less probable than it would be without the evidence."

Mrs. Minnick's testimony was relevant because it showed how others would react under the same or similar circumstances and it helped to explain why the victim did not immediately flee the scene and report the incident to her parents or the authorities. Thus, it tended to show that the alleged incident occurred even though the victim did not react in a manner which might be expected by the jury.

Appellant next contends that even if the evidence was relevant, it was inadmissible under Rule 403, which provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In order for evidence to be excluded under Rule 403, the trial court must determine that the probative value of the evidence is *substantially* outweighed by the danger of *unfair* prejudice. In *Elliott v. State*, Wyo., 600 P.2d 1044, 1049 (1979), we said:

> "The function of performing the comparisons required by Rule 403, W.R.E., generally is held to be discretionary with the trial court. The fact that the evidence is detrimental to the defendant is neutral. For the prejudice factor to come into play the court must conclude that it is unfair."

Appellant states in his brief that Mrs. Minnick's testimony was "damaging" because it "served as a convenient explanation for inconsistencies in the behavior of the victim." Even if appellant is correct in this regard, we fail to see how this demonstrates unfair prejudice, as opposed to mere damaging evidence.

Finally, appellant argues that the trial court committed plain error by allowing Mrs. Minnick to testify as an expert because her testimony was not helpful to the jury. Rule 702, W.R.E. provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of

fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

We have held that expert testimony concerning the behavioral characteristics of sexual misconduct victims may be admissible to assist the jury in understanding the peculiar behavior of the victim in a particular case. *Lessard v. State,* Wyo., 719 P.2d 227, 234 (1986); *Scadden v. State,* Wyo., 732 P.2d 1036, 1046–47 (1987). In *Lessard,* we cautioned that a sexual assault expert may not testify to the victim's credibility. Id. at 233. See also *Brown v. State,* Wyo., 736 P.2d 1110, 1115 (1987); *Smith v. State,* Wyo., 564 P.2d 1194, 1200 (1977). In the present case, while Mrs. Minnick's testimony lent incidental support to the victim's testimony, she did not offer an opinion on the truthfulness or credibility of the victim.

In *Scadden,* supra 732 P.2d at 1047, we recognized that expert testimony concerning delay in reporting sexual assault

" 'may play a particularly useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of popular myths.' " (Quoting *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 457, 681 P.2d 291, 298 (1984)).

This reasoning applies with equal force in the present case, and we reject appellant's assertion that Mrs. Minnick's testimony was not helpful to the jury. Appellant has failed to demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Accordingly, we reject his claim of plain error.

## LESSER–INCLUDED OFFENSE

Finally, appellant contends that the trial court erred in refusing to instruct the jury on fourth degree sexual assault as a lesser-included offense. Rule 32(c), W.R. Cr.P. provides:

"The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

In *State v. Selig,* Wyo., 635 P.2d 786, 789–90 (1981), we observed that the purpose of this rule is to aid the prosecution where it may have failed to prove all the elements of the offense charged and to benefit the defendant by affording the jury a " 'less drastic alternative than the choice between conviction of the offense charged and acquittal.' " (Quoting *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980)). See also 8A Moore's Federal Practice, Criminal Rules § 31.03[1]. In *Selig,* we went on to list several elements which must be present before it can be concluded that a lesser-included offense instruction is appropriate.[2] One of these elements is that

"the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense." Id. at 790.

This element is not satisfied in the present case. Under the facts of this case, the element which distinguishes the two crimes is the age of the victim. This element was never disputed at trial. Thus, the trial court did not err in refusing to instruct the jury on fourth degree sexual assault as a lesser-included offense.

Affirmed.

---

**2.** The elements listed in *Selig,* as restated in *Miller v. State,* Wyo., 755 P.2d 855 (1988), are the following: (1) a proper request is made; (2) the elements of the lesser-included offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser-included offense; (4) the proof on the element or elements differ-

entiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) mutuality exists such that the lesser-included charge can be demanded by either the prosecution or the defense.