2006 WY 25

**Donald Herbert RABUCK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 04–194.

Supreme Court of Wyoming.

March 10, 2006.

862

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Eric A. Johnson, Director, PAP.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Donald Rabuck pled guilty to two counts of taking immodest, immoral, or indecent liberties with a minor, reserving his right to appeal the district court's denial of his motion to dismiss the charges. Mr. Rabuck asserts that the indecent liberties statute is unconstitutionally vague as applied to him. We affirm.

### ISSUE

[¶ 2] Is the indecent liberties statute, Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2003), unconstitutionally vague as applied to Mr. Rabuck?

### FACTS

[¶ 3] Mr. Rabuck was charged with two counts of violating Wyo. Stat. Ann. § 14–3–

105(a) (LexisNexis 2003) [1], for taking immodest, immoral, or indecent liberties with two minors, JW and AL. Following a preliminary hearing, he was bound over to the district court. Prior to trial, Mr. Rabuck filed a motion to dismiss the charges, claiming that there was insufficient evidence to support them, or alternatively, that the indecent liberties statute was unconstitutional. The State resisted the motion and the district court held a hearing. At the hearing, counsel for both parties stipulated to a factual record consisting of the affidavit of probable cause and two videotapes submitted as exhibits. The stipulated record reveals the following facts.

[¶ 4] In late 2003, seventeen-year-old JW was living with her mother and two younger sisters as tenants in Mr. Rabuck's home in Gillette. AL, a seventeen-year-old friend of JW, lived there as well. JW and AL shared a bedroom. On December 1, 2003, JW was hanging up clothes when she noticed a red light in the closet. She found a small wireless video camera on the closet's top shelf. There were no doors on the closet, and the camera was aimed into the bedroom. From that angle, both of the girls' beds were visible. There was black tape on the camera partially covering the red light.

[¶ 5] Later that evening, JW, AL, and JW's mother took the video camera to the Gillette police station and explained the circumstances of the discovery to Officer Lawrence. Additionally, AL described statements which Mr. Rabuck had made to her a few days prior which she considered strange. According to AL, Mr. Rabuck had asked about her sex life and if her boyfriend was keeping her sexually satisfied. Mr. Rabuck told AL that he knew couples who were very open sexually and asked if AL was as well. He asked AL when she would turn eighteen and told her he believed he could keep her sexually satisfied.

[¶ 6] Officer Lawrence contacted Detective Jim Hloucal regarding the incident. On December 2, 2003, Detective Hloucal went to Mr. Rabuck's home and received permission from JW's mother to view the closet where the video camera had been found. He confirmed that the camera placement provided a view of the girls' beds. Later that day Detective Hloucal contacted Mr. Rabuck, who agreed to come to the police station. While at the station, Mr. Rabuck consented to an interview with Detective Hloucal. Mr. Rabuck admitted purchasing the video equipment and placing the camera in the bedroom shared by JW and AL. He stated that he had placed the camera in the girls' bedroom in early November 2003. He admitted "the thought had crossed his mind" that placing the camera in the room would allow him to see the two girls "without their clothes on." He also admitted knowing that both girls were seventeen. Mr. Rabuck stated that he had plugged the receiver into the VCR he had in his bedroom, but denied that he had made any recordings. He denied viewing any images from the camera and claimed that the system did not work.

[¶ 7] Mr. Rabuck also described his attempt to dispose of the receiver and related paperwork at his place of employment after he realized that the camera had been discovered. According to Mr. Rabuck, he disposed of the equipment because he was concerned about how it would "look having placed a video camera in the girls' bedroom." When asked if he had conversations with the girls of a sexual nature, Mr. Rabuck stated that he had asked AL if she would be interested in an older or more mature man.

[¶ 8] On December 3, 2003, Detective Hloucal obtained a search warrant for Mr. Rabuck's residence and his vehicle. During the search of the home, a box for a wireless video camera and receiver were found under Mr. Rabuck's bed. A shipping invoice dated

---

1. Wyo. Stat. Ann. § 14-3-105(a) provides:

 (a) Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6-2-302 through 6-2-304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

October 24, 2003, showing the purchase of wireless video equipment was also found.

[¶ 9] On December 4, 2003, Detective Hloucal was contacted by Mr. Rabuck's employer and was advised that a supervisor had retrieved four VHS tapes from a trash receptacle after observing Mr. Rabuck dispose of them the previous afternoon. The supervisor showed Detective Hloucal the trash barrel where the tapes had been found. His subsequent search of the trash container resulted in discovery of the video receiver.

[¶ 10] On December 5, 2003, Detective Hloucal viewed the tapes. Two of the tapes revealed images of AL and JW in their bedroom. One of the girls was captured completely nude, while other images showed one or both girls partially clothed, getting dressed and undressed.

[¶ 11] After reviewing the evidence, the district court denied the motion to dismiss. In its decision letter, the district court found that "the trier of fact could decide that the nonconsensual filming of minors in a state of undress falls within the coverage of W.S. § 14-3-105(a)." The district court also determined that the statute was not unconstitutionally applied to Mr. Rabuck.

[¶ 12] Mr. Rabuck subsequently entered a conditional plea of guilty to both counts, reserving his right to appeal the district court's adverse determination of his pretrial motion to dismiss.[2] The district court sentenced Mr. Rabuck to two concurrent sentences of two to five years in the penitentiary and imposed a fine of $1000 for each count. This appeal followed.

---

2. The plea was conditional pursuant to W.R.Cr.P. 11(a)(2), which provides:

With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

3. Mr. Rabuck's pretrial motion to dismiss essentially requested a finding that the State's allegations and the stipulated factual record were insufficient to establish a violation of Wyo. Stat.

*DISCUSSION*

[¶ 13] Mr. Rabuck claims that the indecent liberties statute is unconstitutional as applied to him. The statute at issue is Wyo. Stat. Ann. § 14-3-105(a) which provides, in pertinent part: "... any person knowingly taking immodest, immoral or indecent liberties with any child ... is guilty of a felony." A child, as defined by the statute, is "a person under the age of eighteen (18) years." Wyo. Stat. Ann. § 14-3-105(c) (LexisNexis 2003). We review Mr. Rabuck's constitutional challenge *de novo*. *Giles v. State*, 2004 WY 101, ¶ 10, 96 P.3d 1027, 1030 (Wyo. 2004). In conducting such review, we accept as true the facts evident from the stipulated record, affording the State every favorable inference that may be drawn therefrom.[3]

[¶ 14] Under the constitutions of Wyoming and the United States, our legislature may not promulgate vague or uncertain statutes. *Moore v. State*, 912 P.2d 1113, 1114 (Wyo.1996). Consistent with principles of due process, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Griego v. State*, 761 P.2d 973, 975 (Wyo.1988) (quoting *Kolender v. Lawson*, 461 U.S. 352, [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). A statute may be challenged for vagueness on its face or as applied to particular conduct. *Griego*, 761 P.2d at 975.

[¶ 15] It is well settled that the indecent liberties statute is not facially unconstitutional. "On numerous occasions this Court has reviewed cases challenging the indecent liberties statute based on void-for-vagueness

---

Ann. § 14-3-105(a). When a defendant requests relief of this nature, we afford favorable inferences to the State's case against the defendant. *E.g.*, *Smith v. State*, 959 P.2d 1193, 1197 (Wyo. 1998) (motion to dismiss at close of prosecution's case equated to motion for judgment of acquittal); *Gunderson v. State*, 925 P.2d 1300, 1303 (Wyo.1996) (in review of denial of motion for judgment of acquittal, "[w]e accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict.").

grounds, and each time the statute has withstood those challenges." *Moe v. State*, 2005 WY 58, ¶ 10, 110 P.3d 1206, 1210 (Wyo.2005). *See also Giles*, ¶ 19; *Ochoa v. State*, 848 P.2d 1359, 1363 (Wyo.1993); *Griego*, 761 P.2d at 976; *Schmidt v. State*, 2001 WY 73, ¶ 28, 29 P.3d 76, 85 (Wyo.2001); *Misenheimer v. State*, 2001 WY 65, ¶ 15, 27 P.3d 273, 281 (Wyo.2001); *Pierson v. State*, 956 P.2d 1119, 1123–24 (Wyo.1998); *Moore*, 912 P.2d at 1116; *Lovato v. State*, 901 P.2d 408, 412 (Wyo.1995); *Britt v. State*, 752 P.2d 426, 428 (Wyo.1988); and *Sorenson v. State*, 604 P.2d 1031, 1034–35 (Wyo.1979). In light of the foregoing authority, Mr. Rabuck, understandably, asserts only an "as applied" constitutional challenge.

▬ [¶ 16] When "a statute is challenged on an 'as applied' basis, the court examines the statute solely in light of the complainant's specific conduct." *Giles*, ¶ 15, fn.2. In determining whether a statute is unconstitutionally vague as applied to a defendant's conduct, "we must decide whether the statute provides sufficient notice to a person of ordinary intelligence that appellant's conduct was illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement." *Lovato*, 901 P.2d at 412 (citing *Griego*, 761 P.2d at 976). Mr. Rabuck does not allege discriminatory enforcement. He does, however, contend that the statute fails to provide him sufficient notice that his conduct would violate the terms of the statute. In evaluating the sufficiency of the notice, we must consider: (1) the statutory language and any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct; and (2) whether the statute has been previously applied to conduct identical to that of appellant. *Giles*, ¶ 23 (citing *Griego*, 761 P.2d at 976).

▬ [¶ 17] Mr. Rabuck does not contend that any of the specific terms in the statute are "vague in [their] ordinary usage." *Alcalde v. State*, 2003 WY 99, ¶ 16, 74 P.3d 1253, 1261 (Wyo.2003). Indeed, we have previously considered the language of Wyo. Stat. Ann. § 14–3–105(a), and its meaning has been made sufficiently clear. The terms immoral, immodest, and indecent have been defined as:

> "Immoral—not moral: inconsistent with purity or good morals: contrary to conscience or moral law: * * * *broadly* * * * in conflict with generally or traditionally held moral principles. * * *"

> "Immodest—lacking or deficient in modesty * * * b: deficient in sexual modesty: not conforming to the sexual mores of a particular time or place * * *."

> "Indecent—1. not decent * * * b: not conforming to generally accepted standards of morality: tending toward or being in fact something generally viewed as morally indelicate or improper or offensive: being or tending to be obscene. * * *"

*Sorenson*, 604 P.2d at 1034, fn.3 (quoting Webster's Third New International Dictionary (1968)). We consider these three words along with the words "liberties" and "child." Read together, this language narrows and designates "with reasonable certainty the acts and conduct required or forbidden." *Sorenson*, 604 P.2d at 1034. The term "indecent liberties" is self-defining. *Id.* "Indecent liberties" are actions "such as the common sense of society would regard as indecent and improper and a person of ordinary intelligence can weigh contemplated conduct against that prohibition." *Pierson*, 956 P.2d at 1123.

▬ [¶ 18] Mr. Rabuck claims that the statute, as applied to him, is too vague because it requires speculation about which aspect of his conduct was forbidden. He questions whether his conduct was forbidden: (1) because he videotaped the juveniles; (2) because he recorded them in a state of undress; or (3) because he did not erase those images. However, we need not engage in this dissection and postulate whether one portion of his conduct, alone, would violate the statute. We review Mr. Rabuck's challenge to the statute as applied to him, which means that we consider his specific conduct in its entirety. Because he does not challenge the facial validity of the statute, Mr. Rabuck lacks "standing" to assert hypothetical applications of the statute to support his "as applied" challenge. *Alcalde*, ¶ 13.

[¶ 19] Mr. Rabuck concedes that, overall, his conduct could be considered indecent or improper, but he argues that prior judicial application and construction of the indecent liberties statute does not support its application here. He relies heavily upon the absence of any Wyoming case law involving the indecent liberties statute applied to similar conduct to support his claim that there was insufficient notice that his conduct would violate Wyo. Stat. Ann. § 14–3–105(a). Mr. Rabuck is correct that we have not previously addressed the indecent liberties statute in the context of surreptitious videotaping. However, the lack of prior cases discussing similar conduct is not determinative. As the State aptly observes, the indecent liberties statute should not be subject to challenge "by virtue of the fact that it is broad enough to capture even innovative forms of sexual imposition upon minors." The indecent liberties statute has been a part of Wyoming law for nearly five decades and we have uniformly given it broad application. *Schmidt*, ¶ 27.

[¶ 20] In several instances when we have considered "novel" conduct in light of the application of a criminal statute, we have examined the defendant's consciousness of guilt in assessing whether the defendant had notice of the criminal prohibition. *Sorenson*, 604 P.2d at 1035 (defendant's "inquiry to the twelve-year-old girl: 'you won't tell anybody, will you?' reflect[ed] recognition" that his act of rubbing her breasts and trying to unbutton her shirt violated the indecent liberties statute); *Campbell v. State*, 999 P.2d 649, 658 (Wyo.2000) (Campbell's testimony establishes she knew that her conduct was prohibited); *Saiz v. State*, 2001 WY 76, ¶ 14, 30 P.3d 21, 26 (Wyo.2001) (appellant recognized his actions were unlawful). Here, Mr. Rabuck disposed of the video receiver when he learned that the camera had been discovered. He attempted to deceive Detective Hloucal by telling him that he had not recorded or seen any images and that the system had not worked, when, in fact, he had made several recordings. Mr. Rabuck's efforts to conceal his conduct indicate his understanding that his conduct was unlawful.

[¶ 21] Turning to our indecent liberties cases involving other conduct, Mr. Rabuck argues that these cases have limited the application of the statute. He makes several assertions that his behavior does not fall within the ambit of Wyo. Stat. Ann. § 14–3–105(a), as circumscribed by prior judicial construction. First, he claims that the indecent liberties statute only prohibits conduct which affects the "morals" of the minor victim and cites to our decision in *Pierson* where we stated, "[t]he purpose of the indecent liberties statute is to protect the morals of a child . . . ." *Pierson*, 956 P.2d at 1124 (citing *Derksen v. State*, 845 P.2d 1383, 1387 (Wyo. 1993)). He argues that he did not "endanger the morals of the juvenile females he discreetly videotaped in a state of undress" because they "were not aware of the recordings until after the video camera was found" and he "did not encourage the females to engage in any type of act or conduct which could be considered immoral, immodest, or indecent."

[¶ 22] The State characterizes our language in *Pierson* as a holdover from the past, when sex crimes were thought to morally contaminate the victim. The State suggests that, as used in *Pierson*, the word "morals" has served merely as convenient shorthand for the complex interests protected by statutes prohibiting rape and other sex crimes and that use of that language should not imply that victims of indecent liberties are morally compromised. We agree with the State that a more accurate statement of the policy behind the indecent liberties statute is "to protect children from exploitation." *Misenheimer*, ¶ 12. Requiring a victim to realize the impropriety of the conduct and to feel simultaneously victimized would fail to protect several classes of foreseeable victims, such as unconscious or incapacitated victims and children too young to understand the inappropriate nature of the conduct.

[¶ 23] Mr. Rabuck also asserts that Wyo. Stat. Ann. § 14–3–105 only applies when there is sexual contact between the defendant and the minor. He points to our decision in *Giles*, arguing that language in that decision equates the crime of indecent liberties with sexual assault. The conduct at issue in *Giles* was sexual intercourse with a minor, and our decision simply reflected the

certitude that such conduct constituted indecent liberties. *Giles* did not limit application of the indecent liberties statute to offenses amounting to sexual assault.

 [¶ 24] Additionally, other decisions of this Court demonstrate that physical touching is not a required element of the crime of indecent liberties. *Schmidt,* ¶¶ 4–7; *Griswold v. State,* 994 P.2d 920, 925 (Wyo. 1999); *See also Derksen v. State,* 845 P.2d 1383, 1388 (Wyo.1993) (indicating that jury's decision to convict defendant of taking indecent liberties could have been based upon evidence that he displayed lewd photographs to minor, although instructing on indecent liberties was error because it was not lesser included offense). In *Schmidt,* we affirmed a conviction where the perpetrator showed *Penthouse* photos to an eleven-year-old and masturbated in front of her. *Schmidt,* ¶¶ 4–7. In *Griswold,* the defendant exposed himself to two children and forced one child to perform fellatio while the other child watched. We sustained Griswold's conviction of taking indecent liberties with the child who was forced to watch. *Id.* at 925.

[¶ 25] Mr. Rabuck attempts to distinguish our decisions in *Schmidt* and *Griswold* by claiming that they involved a type of assault—a sexual act in the presence of the minor. He contends that because there was no contact with AL or JW and no sexual act in their presence, he could not have committed the crime of indecent liberties. Although not expressly addressed by Mr. Rabuck, we discern that his argument that presence or contact is required implicates the "with a minor" language in the indecent liberties statute. Generally, "with" is a "word denoting a relation of proximity, contiguity, or association." Black's Law Dictionary 1602 (6th ed.1990). We agree that there is a relational component which must be demonstrated between the immodest, immoral or indecent conduct and the minor victim in order to constitute the crime of indecent liberties. However, we find that this correlation was met in this case because Mr. Rabuck was constructively present with AL and JW while they were undressing.

[¶ 26] We find persuasive the reasoning of *State v. McClees,* 108 N.C.App. 648, 424 S.E.2d 687 (1993) which determined that constructive presence can place a defendant "with a minor" in establishing the crime of indecent liberties. In *McClees,* the defendant, headmaster of a private school, asked a fifteen-year-old female student to try on basketball uniforms in order to help him decide which uniform to buy for use at the school. He instructed the student to change clothes in his office while he waited outside. Without the student's knowledge, he had secretly placed a video camera on the shelf in his office and recorded her while she undressed. Defendant argued that the State failed to show that he took an indecent liberty "with" a child because he was not in her actual presence. The Court rejected that argument stating:

> Certainly defendant's behavior was such as the common sense of society would regard as indecent and improper. Although the defendant was not actually located in the room with his victim, he strategically placed a camera such that she was unaware of its presence, thereby secretly filming the child as she changed clothes several times at his direction. As a result, he essentially had the same capability of viewing her in a state of undress as he would have had, were he physically present in the room. Through the forces of modern electronic technology, namely the video camcorder, one can constructively place himself in the "presence" of another. Thus we find that defendant was "constructively present" and thereby took immoral, improper or indecent liberties "with" the minor victim.

*McClees,* 424 S.E.2d at 690.

[¶ 27] After briefs were submitted in this case, the Wyoming legislature passed a statute prohibiting voyeurism.[4] At oral argu-

---

4. The legislature adopted Wyo. Stat. Ann. § 6–4–304, effective July 1, 2005. That statute provides:

 (a) A person is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if he, without the consent of the person being viewed, commits the crime of voyeurism by looking in a clandestine, surreptitious, prying

ment, Mr. Rabuck asserted that the recent enactment of the voyeurism statute supports his contention that the indecent liberties statute was not designed to cover his specific conduct. He claims the legislature did not intend for the indecent liberties statute to be applied to videotaping because the concept of video voyeurism was not contemplated when it was adopted. Any other interpretation of the indecent liberties statute, he claims, would render the new voyeurism statute void of any meaningful effect.

[¶ 28] We reject Mr. Rabuck's contention for several reasons. First, certain conduct may violate more than one statute, and the existence of two applicable criminal statutes with different penalties is permissible. "It is well established that when an act violates more than one criminal statute, the State may prosecute under either so long as it does not discriminate against any class of defendants." *Lovato*, 901 P.2d at 412 (citing *Bueno–Hernandez v. State*, 724 P.2d 1132, 1140 (Wyo.1986), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987)). *See also Nowack v. State*, 774 P.2d 561, 565 (Wyo.1989) ("[t]he fact that two statutes may provide different penalties for the same proscribed conduct does not constrain prosecution under either statute."). Second, Mr. Rabuck overlooks an important aspect of the voyeurism statute. The statute also protects *adults* who may be victims of voyeurism.

[¶ 29] While video voyeurism may not have been contemplated when the indecent liberties statute was enacted, the statute was obviously drawn broadly to encompass a variety of behaviors from which children should be protected. We have recognized that statutes designed to protect children tend to be general in their terms. *Campbell*, 999 P.2d

at 657. *Accord State v. Kistle*, 59 N.C.App. 724, 297 S.E.2d 626, 628 (1982) (broad protections of indecent liberties statute " . . . protect children from precisely the type of activity engaged in by . . . defendant" where defendant took nude photos of a female child, including photo where child was in sexually suggestive position). We do not find that the recent enactment of a voyeurism statute was intended to limit the protections afforded to minors by Wyo. Stat. Ann. § 14–3–105(a).

[¶ 30] As a final point, Mr. Rabuck argues that he had a legitimate purpose for setting up the video surveillance system in his home—to monitor and maintain security. His suggested justification does not impact our analysis. Mr. Rabuck's constitutional challenge was raised and determined in a motion to dismiss based upon a stipulated factual record. At such stage of the proceedings, the factual record must be viewed in the light most favorable to the State. Based upon the stipulated record and the reasonable inferences to be drawn therefrom, we are comfortable in concluding that sufficient evidence exists to support the district court's decision to deny the motion to dismiss.

[¶ 31] In evaluating the culpability of Mr. Rabuck's conduct, the "totality of the circumstances" must be considered. *Pierson*, 956 P.2d at 1125. The record reflects that Mr. Rabuck engaged in clandestine efforts to video tape the girls in their bedroom in an attempt to obtain nude or partially nude images of them. He obtained and preserved those images. He continued to operate his surveillance system until it was discovered. We have no trouble concluding that the common sense of society could regard such acts as violative of the statute and that a person of ordinary intelligence had sufficient notice

---

or secretive nature into an enclosed area where the person being viewed has a reasonable expectation of privacy, including, but not limited to:
 (i) Restrooms;
 (ii) Baths;
 (iii) Showers; or
 (iv) Dressing or fitting rooms.
 (b) A person is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than five thousand dollars ($5,000.00), or both, if he:

(i) Commits the offense specified in subsection (a) of this section by knowingly or intentionally capturing an image by means of a camera, a video camera or any other image recording device; or
(ii) Uses a camera, video camera or any other image recording device for the purpose of observing, viewing, photographing, filming or videotaping another person under the clothing being worn by the other person where that other person has not consented to the observing, viewing, photographing, filming or videotaping.

that such conduct would be against the law. Mr. Rabuck's attempts to mislead the investigating officer and dispose of the camera and video tapes provide evidentiary support indicating that he knew his conduct was unlawful.

[¶ 32] We conclude that the indecent liberties statute was not unconstitutionally applied to Mr. Rabuck and find no error in the district court's denial of the motion to dismiss.

[¶ 33] Affirmed.

VOIGT, Justice, specially concurring.

[¶ 34] I concur in the result of the majority opinion out of deference to the doctrine of *stare decisis. See Moe v. State,* 2005 WY 149, 123 P.3d 148 (Wyo.2005); *Moe v. State,* 2005 WY 58, 110 P.3d 1206 (Wyo.2005); and *Giles v. State,* 2004 WY 101, 96 P.3d 1027 (Wyo.2004).