2006 WY 133

**Matthew Joseph RUBY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–165.

Supreme Court of Wyoming.

Oct. 19, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender, and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Eric A. Johnson, Director, Prosecution Assistance Program.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

* Chief Justice at time of expedited conference.

HILL, Justice.

[¶ 1] Matthew J. Ruby (Ruby) appeals a conviction for taking indecent liberties with a child in violation of Wyo. Stat. Ann. § 14–3–105(a)[1] (LexisNexis 2005). Ruby alleges that the evidence was insufficient to support the conviction and that § 14–3–105(a) was unconstitutionally vague as applied to his conduct. Our holding and analysis in *Rabuck v. State*, 2006 WY 25, 129 P.3d 861 (Wyo.2006) is dispositive of the arguments raised by Ruby and we will affirm his conviction.

## ISSUES

[¶ 2] Ruby raises two issues:

I. Whether [Ruby's] conduct violated Wyo. Stat. Ann. § 14–3–105(a).

II. Whether Wyo. Stat. Ann. § 14–3–105 is unconstitutionally vague as applied to [Ruby's] conduct because there is not notice that his conduct was violative of the indecent liberties statute.

## FACTS

[¶ 3] Ruby's probation officer discovered a videotape that depicted Ruby engaging in sexual activities with a seven-year-old child. Ruby, who was sixteen at the time, was charged with two counts of second-degree sexual assault[2] and one count of taking inde-

---

1. **§ 14–3–105. Immoral or indecent acts; penalty.**

   (a) Except under circumstances constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

   (b) An actor convicted under subsection (a) of this section shall be punished by life imprisonment without parole if:

   (i) The circumstances of the crime involve a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim; and

   (ii) The actor has two (2) or more previous convictions for any of the following designated offenses, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere:

   (A) A conviction under W.S. 6–2–302 through 6–2–304 or a criminal statute containing the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304.

   (B) Repealed by Laws 1997, ch. 135, § 2.

   (C) A conviction under W.S. 14–3–105(a), or a criminal statute containing the same or similar elements as the crime defined by W.S. 14–3–105(a), if the circumstances of the crime involved a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim.

   (c) As used in this section, "child" means a person under the age of eighteen (18) years.

2. **§ 6–2–303. Sexual assault in the second degree.**

   (a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

   (i) The actor causes submission of the victim by threatening to retaliate in the future against the victim or the victim's spouse, parents, brothers, sisters or children, and the victim reasonably believes the actor will execute this threat. "To retaliate" includes threats of kidnapping, death serious bodily injury or extreme physical pain;

   (ii) The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution;

   (iii) The actor administers, or knows that someone else administered to the victim, without the prior knowledge or consent of the victim, any substances which substantially impairs the victim's power to appraise or control his conduct;

   (iv) The actor knows or should reasonably know that the victim submits erroneously believing the actor to be the victim's spouse;

   (v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim;

   (vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit; or

   (vii) The actor inflicts sexual intrusion in treatment or examination of a victim for purposes or in a manner substantially inconsistent with reasonable medical practices.

   (b) A person is guilty of sexual assault in the second degree if he subjects another person to sexual contact and causes serious bodily injury to the victim under any of the circumstances listed in W.S. 6–2–302(a)(i) through (iv) or paragraphs (a)(i) through (vi) of this section.

cent liberties with a minor. The indecent liberties charge was predicated on Ruby's videotaping of the incident, not the acts themselves. After a trial, the jury returned a verdict of not guilty on the two second-degree sexual assault charges, guilty on two lesser included charges of third-degree sexual assault,[3] and guilty on the count of indecent liberties. Ruby was sentenced to five to fifteen years on each of the third-degree sexual assault counts with the sentences to run consecutively. He received a five- to ten-year sentence on the indecent liberties count that was to run concurrently to the other sentences. On appeal, Ruby challenges only the validity of the indecent liberties conviction.

## STANDARD OF REVIEW

[¶ 4] In reviewing claims that a conviction is not supported by sufficient evidence:

> [T]his Court accepts as true the State's evidence, affording to the State those inferences which may be reasonably and fairly drawn from that evidence. This Court does not consider the evidence in conflict with the State's evidence and the inferences therefrom. Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Jones v. State,* 2006 WY 40, ¶ 9, 132 P.3d 162, 165 (Wyo.2006) (citing *Leyo v. State,* 2005 WY 92, ¶ 11, 116 P.3d 1113, 1116–17 (Wyo. 2005); and *Brown v. State,* 2005 WY 37, ¶ 18, 109 P.3d 52, 57 (Wyo.2005)).

[¶ 5] We apply the following standards in analyzing claims that a statute is unconstitutional as applied to particular conduct:

**3. § 6–2–304. Sexual assault in the third degree.**

(a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:

(i) The actor is at least four (4) years older than the victim and inflicts sexual intrusion on a victim under the age of sixteen (16) years; or

(ii) The actor is an adult and subjects a victim under the age of fourteen (14) years to

> When "a statute is challenged on an 'as applied' basis, the court examines the statute solely in light of the complainant's specific conduct." [*Giles v. State,* 2004 WY 101, ¶ 15, 96 P.3d 1027, 1031, fn. 2 (Wyo. 2004) ]. In determining whether a statute is unconstitutionally vague as applied to a defendant's conduct, "we must decide whether the statute provides sufficient notice to a person of ordinary intelligence that appellant's conduct was illegal and whether the facts of the case demonstrate arbitrary and discriminatory enforcement." [*Lovato v. State,* 901 P.2d 408, 412 (Wyo. 1995) and *Griego v. State,* 761 P.2d 973, 976 (Wyo.1988) ]

*Rabuck,* ¶ 16, 129 P.3d at 865. Ruby does not allege discriminatory enforcement; he contends that the statute failed to provide him with sufficient notice that his conduct would violate its terms.

> In evaluating the sufficiency of the notice, we must consider: (1) the statutory language and any prior court decisions which have placed a limiting construction on the statute or have applied it to specific conduct; and (2) whether the statute has been previously applied to conduct identical to that of appellant.

*Id.* (citing *Giles,* ¶ 23, 96 P.3d at 1035; and *Griego,* 761 P.2d at 976).

## DISCUSSION

[¶ 6] While Ruby raises two separate issues, his arguments in each are interrelated. Ruby argues that § 14–3–105(a) proscribes sexual assault. He contends that inherent in that proscription is a requirement that there be contact between the defendant and the victim. Ruby notes that the conduct underlying the indecent liberties charge against him was the videotaping, not the

sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim;

(iii) The actor subjects a victim to sexual contact under any of the circumstances of W.S. 6–2–302(a)(i) through (iv) or 6–2–303(a)(i) through (vi) without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

physical contact between him and the victim, and that there was no evidence that the victim had any knowledge of the videotaping. Since videotaping by itself is not a sexual assault, Ruby concludes that the statute "does not prohibit the discreet video recording of minors even if the act being recorded is indecent." Accordingly, Ruby concludes that his conduct was not contemplated by the statute and there is insufficient evidence to sustain the conviction. Similarly, Ruby argues that § 14–3–105(a) is unconstitutionally vague as applied to his conduct because it is not clear that videotaping a sexual assault is prohibited under the statute.

[¶ 7] After Ruby's brief was filed in this case, we issued our decision in *Rabuck*. Rabuck had secretly placed a video camera in the bedroom closet of two teenage girls who were staying at his house. Rabuck was charged with two counts of taking indecent liberties with a child in violation of § 14–3–105(a). On appeal, he challenged the constitutionality of the statute as applied to his conduct making the same arguments put forth by Ruby:

> Mr. Rabuck claims that the statute, as applied to him, is too vague because it requires speculation about which aspect of his conduct was forbidden. He questions whether his conduct was forbidden: (1) because he videotaped the juveniles; (2) because he recorded them in a state of undress; or (3) because he did not erase those images. However, we need not engage in this dissection and postulate whether one portion of his conduct, alone, would violate the statute. We review Mr. Rabuck's challenge to the statute as applied to him, which means that we consider his specific conduct in its entirety. Because he does not challenge the facial validity of the statute, Mr. Rabuck lacks "standing" to assert hypothetical applications of the statute to support his "as applied" challenge. [*Alcalde v. State*, 2003 WY 99, ¶ 13, 74 P.3d 1253, 1259–60 (Wyo. 2003)]

Mr. Rabuck concedes that, overall, his conduct could be considered indecent or improper, but he argues that prior judicial application and construction of the inde-

cent liberties statute does not support its application here. He relies heavily upon the absence of any Wyoming case law involving the indecent liberties statute applied to similar conduct to support his claim that there was insufficient notice that his conduct would violate Wyo. Stat. Ann. § 14–3–105(a). Mr. Rabuck is correct that we have not previously addressed the indecent liberties statute in the context of surreptitious videotaping. However, the lack of prior cases discussing similar conduct is not determinative. As the State aptly observes, the indecent liberties statute should not be subject to challenge "by virtue of the fact that it is broad enough to capture even innovative forms of sexual imposition upon minors." The indecent liberties statute has been a part of Wyoming law for nearly five decades and we have uniformly given it broad application. [*Schmidt v. State*, 2001 WY 73, ¶ 27, 29 P.3d 76, 84–85 (Wyo.2001)].

In several instances when we have considered "novel" conduct in light of the application of a criminal statute, we have examined the defendant's consciousness of guilt in assessing whether the defendant had notice of the criminal prohibition. [*Sorenson v. State*, 604 P.2d 1031, 1035 (Wyo.1979)] (defendant's "inquiry to the twelve-year-old girl: 'you won't tell anybody, will you?' reflected recognition" that his act of rubbing her breasts and trying to unbutton her shirt violated the indecent liberties statute); *Campbell v. State*, 999 P.2d 649, 658 (Wyo.2000) (Campbell's testimony establishes she knew that her conduct was prohibited); *Saiz v. State*, 2001 WY 76, ¶ 14, 30 P.3d 21, 26 (Wyo.2001) (appellant recognized his actions were unlawful). Here, Mr. Rabuck disposed of the video receiver when he learned that the camera had been discovered. He attempted to deceive Detective Hloucal by telling him that he had not recorded or seen any images and that the system had not worked, when, in fact, he had made several recordings. Mr. Rabuck's efforts to conceal his conduct indicate his understanding that his conduct was unlawful.

Turning to our indecent liberties cases involving other conduct, Mr. Rabuck ar-

gues that these cases have limited the application of the statute. He makes several assertions that his behavior does not fall within the ambit of Wyo. Stat. Ann. § 14–3–105(a), as circumscribed by prior judicial construction. First, he claims that the indecent liberties statute only prohibits conduct which affects the "morals" of the minor victim and cites to our decision in [*Pierson v. State*, 956 P.2d 1119 (Wyo. 1998)] where we stated, "[t]he purpose of the indecent liberties statute is to protect the morals of a child...." *Pierson,* 956 P.2d at 1124 (citing *Derksen v. State*, 845 P.2d 1383, 1387 (Wyo.1993)). He argues that he did not "endanger the morals of the juvenile females he discreetly videotaped in a state of undress" because they "were not aware of the recordings until after the video camera was found" and he "did not encourage the females to engage in any type of act or conduct which could be considered immoral, immodest, or indecent."

The State characterizes our language in *Pierson* as a holdover from the past, when sex crimes were thought to morally contaminate the victim. The State suggests that, as used in *Pierson,* the word "morals" has served merely as convenient shorthand for the complex interests protected by statutes prohibiting rape and other sex crimes and that use of that language should not imply that victims of indecent liberties are morally compromised. We agree with the State that a more accurate statement of the policy behind the indecent liberties statute is "to protect children from exploitation." [*Misenheimer v. State,* 2001 WY 65, ¶ 12, 27 P.3d 273, 280–81 (Wyo.2001)]. Requiring a victim to realize the impropriety of the conduct and to feel simultaneously victimized would fail to protect several classes of foreseeable victims, such as unconscious or incapacitated victims and children too young to understand the inappropriate nature of the conduct.

Mr. Rabuck also asserts that Wyo. Stat. Ann. § 14–3–105 only applies when there is sexual contact between the defendant and the minor. He points to our decision in *Giles,* arguing that language in that decision equates the crime of indecent lib-

erties with sexual assault. The conduct at issue in *Giles* was sexual intercourse with a minor, and our decision simply reflected the certitude that such conduct constituted indecent liberties. *Giles* did not limit application of the indecent liberties statute to offenses amounting to sexual assault.

Additionally, other decisions of this Court demonstrate that physical touching is not a required element of the crime of indecent liberties. *Schmidt,* ¶¶ 4–7, 29 P.3d 79–80; *Griswold v. State,* 994 P.2d 920, 925 (Wyo.1999); see also *Derksen v. State,* 845 P.2d 1383, 1388 (Wyo.1993) (indicating that jury's decision to convict defendant of taking indecent liberties could have been based upon evidence that he displayed lewd photographs to minor, although instructing on indecent liberties was error because it was not lesser included offense). In *Schmidt,* we affirmed a conviction where the perpetrator showed *Penthouse* photos to an eleven-year-old and masturbated in front of her. *Schmidt,* ¶¶ 4–7, 29 P.3d 79–80. In *Griswold,* the defendant exposed himself to two children and forced one child to perform fellatio while the other child watched. We sustained Griswold's conviction of taking indecent liberties with the child who was forced to watch. *Id.* at 925.

Mr. Rabuck attempts to distinguish our decisions in *Schmidt* and *Griswold* by claiming that they involved a type of assault—a sexual act in the presence of the minor. He contends that because there was no contact with AL or JW and no sexual act in their presence, he could not have committed the crime of indecent liberties. Although not expressly addressed by Mr. Rabuck, we discern that his argument that presence or contact is required implicates the "with a minor" language in the indecent liberties statute. Generally, "with" is a "word denoting a relation of proximity, contiguity, or association." Black's Law Dictionary 1602 (6th ed.1990). We agree that there is a relational component which must be demonstrated between the immodest, immoral or indecent conduct and the minor victim in order to constitute the crime of indecent liberties. However,

we find that this correlation was met in this case because Mr. Rabuck was constructively present with AL and JW while they were undressing.

We find persuasive the reasoning of *State v. McClees,* 108 N.C.App. 648, 424 S.E.2d 687 (N.C.App.1993) which determined that constructive presence can place a defendant "with a minor" in establishing the crime of indecent liberties. In *McClees,* the defendant, headmaster of a private school, asked a fifteen-year-old female student to try on basketball uniforms in order to help him decide which uniform to buy for use at the school. He instructed the student to change clothes in his office while he waited outside. Without the student's knowledge, he had secretly placed a video camera on the shelf in his office and recorded her while she undressed. Defendant argued that the State failed to show that he took an indecent liberty "with" a child because he was not in her actual presence. The Court rejected that argument stating:

> Certainly defendant's behavior was such as the common sense of society would regard as indecent and improper. Although the defendant was not actually located in the room with his victim, he strategically placed a camera such that she was unaware of its presence, thereby secretly filming the child as she changed clothes several times at his direction. As a result, he essentially had the same capability of viewing her in a state of undress as he would have had, were he physically present in the room. Through the forces of modern electronic technology, namely the video camcorder, one can constructively place himself in the "presence" of another. Thus we find that defendant was "constructively present" and thereby took immoral, improper or indecent liberties "with" the minor victim.

*McClees,* 424 S.E.2d at 690.

*Rabuck,* ¶¶ 18–26, 129 P.3d at 865–67. Our discussion in *Rabuck* is dispositive of the arguments raised by Ruby.[4] For the reasons noted in that case, we reject Ruby's argument that § 14–3–105(a) does not proscribe the discreet video recording of minors engaged in indecent acts. Similarly, we have no trouble concluding that the "common sense of society" would regard the videotaping of sexual acts with a seven-year-old child as a violation of the statute, and "that a person of ordinary intelligence had sufficient notice that such conduct would be against the law." *Rabuck,* ¶ 31, 129 P.3d at 868–69.

## CONCLUSION

[¶ 8] Ruby's indecent liberties conviction under Wyo. Stat. Ann. § 14–3–105(a) is affirmed.

VOIGT, C.J., files a special concurrence.

VOIGT, Chief Justice, specially concurring.

[¶ 9] I concur in the result of the majority opinion out of deference to the doctrine of *stare decisis.* See *Rabuck v. State,* 2006 Wyo. 25, ¶ 34, 129 P.3d 861, 869.

---

4. The only significant difference between that case and this being that unlike Rabuck, Ruby was actually present with the victim during the videotaping. The relational component between the immodest, immoral or indecent conduct and the minor victim was obviously present here.